482 So.2d 48 (1986)
STATE of Louisiana
v.
Mark VINSON.
No. 85-KA-383.
Court of Appeal of Louisiana, Fifth Circuit.
January 13, 1986.
*49 John M. Mamoulides, Dist. Atty., Dorothy A. Pendergast, Asst. Dist. Atty., Research and Appeals, Gretna, for plaintiff-appellee.
Joseph R. Depaoli, New Orleans, for defendant-appellant.
Before CHEHARDY, KLIEBERT and CURRAULT, JJ.
CURRAULT, Judge.
On February 21, 1985, the defendant, Mark A. Vinson, was charged by a bill of information for violating LSA-R.S. 40:966 in that he did knowingly and intentionally possess with intent to distribute a controlled dangerous substance, to wit: marijuana. On May 8, 1985, the defendant represented by counsel, was arraigned and pled not guilty to the charge.
On May 23, 1985, counsel for the defense filed two motions to suppress: a motion to suppress inculpatory statements and a motion to suppress unconstitutionally seized evidence.
A hearing on the motion to suppress unconstitutionally seized evidence was held on June 10, 1985. In lieu of Detective Akins taking the witness stand, by stipulation of counsel, the trial court reviewed his report dated February 21, 1985, and accepted it as his testimony. After reviewing the record, the court denied the motion on the basis that the agent had probable cause to make the arrest and search. At that point, the defendant withdrew his former plea of not guilty and tendered to the court under State v. Crosby, 338 So.2d 584 (La.1976) a plea of guilty to simple possession of marijuana, LSA-R.S. 40:966(C). The plea was acceptable to the state and the bill of information was amended to a charge of simple possession of marijuana.
Following a Boykin colloquy, the defendant waived all legal delays and requested immediate sentencing. The court sentenced the defendant to serve a term of six months in the Jefferson Parish Correctional Center.
The defendant subsequently appealed the conviction and sentence, alleging as error the following:
(1) that the trial court erred in overruling the motion to suppress evidence; and
(2) that the sentence of six months in the Jefferson Parish Correctional Center in this case was excessive on conviction of misdemeanor possession of marijuana.
The facts, as presented in Detective Akins's report, are as follows:
"(1) On 2/21/85, Agent Akins received a phone call at the Narcotics office from a Confidential Informant, who stated he *50 knew a white male by the name of Mark Vinson who was holding 5 lbs of Marijuana. It should be known that this informant has supplied Agents with information which has lead (sic) to arrest and conviction with the seizure of narcotics.
(2) The CI stated that he was able to score from the subject, but the only problem was, this subject had already broke (sic) the weed down and he was only selling in large amounts, but this weed was located at 5009 Rochester Drive, Marrero, La.
(3) The CI also stated to Agent Akins via phone at the Narcotics office, that Mark Vinson was noted for hiding his Marijuana in very strange places. Once Mark carried his weed to a wooded area and put the weed in a tree, Mark has placed weed in garbage bags and left the weed in a trash can overnight. Also he digs holes in the ground of his back yard and covers the weed. The CI terminated the conversation by stating that Mark wasn't home at this time, but the weed was there. Mark had gone to the Blue Lagoon Lounge located on Ames Blvd., this is his place of employment. Also Mark had carried a few ounce bags to deal to a few of his special friends at said location, and he was driving a brown van, bearing La. license T026305.
(4) Agent Akins then departed the Narcotics office and went to the West Bank and located the Blue Lagoon, where Agent found a brown van bearing La. license T026305. Agent Akins then took a surveillance point on the vehicle. After approx. 30 minutes of surveillance time having passed, Agent observed two white males exit the lounge. One Agent knew (sic) to be Mark Vinson, having been shown this subject before by the CI. Mark went to the van, removed something and passed it to the other white male who in return passed something to Mark. This type of transaction lead (sic) Agent to believe it was a drug transaction, the other white male departed the area in a grey pickup truck, this took place at approx. 1:45 P.M.
(5) Mark returned back inside and after a short period of time, Mark departed the area in the van. Agent having called for assistance, followed the van and a vehicle stop was made at Lapalco and Barataria. At this time it was then learned that Mark was in possession of Marijuana, approx. $1,492.00 and a note pad which contained possible drug notes or drug figures. Agent Akins then advised Mark of his rights, placed him under arrest and seized the above material as evidence. After speaking with Mark, it was then learned that Mark wished to cooperate with the Agents and he signed a Consent Search form for his residence.
(6) Agent Akins being assisted by Sgt. Dillon, Det. Swan and Sgt. Dorsey went to 5009 Rochester Drive, Marrero, La., the residence of Mark Vinson. Upon arriving at said location, Mark was allowed to open the door to 5009 Rochester. Agent made a security check of the residence and learned that Mark was making arrangements to move. Agent Akins began searching the residence and found and seized assorted papers showing that Mark did reside at the address. Agent Akins also found and seized one large green garbage bag containing ten clear plastic bags, each containing a green vegetable material, which was identified as Marijuana by Agent Akins. This was seized from a boat which was chained under the carport. The Marijuana was well hidden in the boat. Agent Akins again advised Mark of his rights and the additional charges. Agent continued the search finding no other evidence. Mark was allowed to secure his residence and transported to the Narcotics office where he was booked accordingly. At the office Mark was given a copy of the Consent Search and all evidence seized."
The issue in the first assignment of error is whether the informant's tip, together with the police officer's observations, established the requisite probable cause to justify the warrantless detention of the defendant.
*51 In this regard, a recent United States Supreme Court ruling in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) reviewed the area of law concerning confidential informant's tips and the ensuing police actions.
In Gates, the police department of Bloomingdale, Illinois received an anonymous letter stating that the respondents were engaged in selling drugs. The letter included a detailed description of the respondent's drug activity, including their future plans to travel to Florida to pick up drugs and bring them back to Illinois. The police made arrangements for surveillance of their activities. Once it was determined that the statements made in the letter proved correct, a warrant was issued and the respondents were arrested. Based on the above facts, the court reasoned:
"We agree with the Illinois Supreme Court that an informant's `veracity' `reliability' and `basis of knowledge' are all highly relevant in determining the value of his report. We do not agree, however, that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case, which the opinion of the Supreme Court of Illinois would imply. Rather, as detailed below, they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is `probable cause' to believe that contraband or evidence is located in a particular place.
"This totality of the circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific `tests' be satisfied by every informant's tip. Perhaps the central teaching of our decisions bearing on the probable cause standard is that it is a `practical, nontechnical conception.' Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)." [Footnotes omitted] Gates, supra, at 2327-2328.
The court then held: "For all these reasons, we conclude that it is wiser to abandon the `two pronged test' established by our decision in Aguilar and Spinelli. [Footnote omitted]. In its place we reaffirm the totality of the circumstances analysis that traditionally has informed probable cause determinations." Gates, supra, at 2332.
In State v. Shepherd, 470 So.2d 608 (La. App. 1st Cir.1985), a reliable, confidential informant (the confidential informant had given information over a three-year period which had resulted in three or four arrests) gave police officers information pertaining to the defendant Shepherd. The informant told officers that the defendant would leave her house, drive to her mother's and pick up thirty sets of T's and Blues (the street name for pentazocine [talwin] and pyribenzamine). The informant then gave the officers an address where the defendant planned to deliver the drugs. The informant also provided the routes the defendant would take. The defendant was ultimately followed, stopped, searched and arrested. The court in this case examined the holding in Illinois v. Gates, supra, and found that Shepherd was factually similar to Gates. The court stated as follows:
"In the instant case, as in Draper, and Gates, the informant predicted future acts of the suspect and those acts occurred and were corroborated by police surveillance.... As indicated in Draper and Gates, the corroboration of the `innocent' behavior provides probable cause to believe the allegation of drug possession in the informant's tip is reliable." Shepherd, supra, at 616.
In the present case, the actions of the defendant were predicted by the confidential informant and Agent Akins also observed activity which could indicate a drug transaction. The officer's observations further corroborate the confidential informant's tip and provides additional facts for this court to conclude, like Shepherd, that probable cause existed under the totality of circumstances test.
The next question is whether or not the factors listed above provided Agent Akins with sufficient information to support *52 a finding of probable cause to believe the vehicle in which the defendant was riding contained marijuana. If probable cause was present to believe marijuana was in the vehicle, no warrant was required to search the vehicle. Carroll v. United States, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543 (Act Term 1924); Colorado v. Bannister, 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980); State v. Burks, 466 So.2d 681 (La.App. 5th Cir.1985).
In Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983), the court presented a definition of probable cause.
"As the court frequently has remarked probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would `warrant a man of reasonable caution in the belief', Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A `practical, nontechnical' probability that incriminating evidence is involved is all that is required." [Cites omitted]
The parameters of a warrantless search were established in United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), where the court stated "the scope of a warrantless search based on probable cause is no narrowerand no broader than that scope of a search authorized by a warrant supported by probable cause. Only the prior approval of the magistrate is waived, the search otherwise is as the magistrate could authorize."
In State v. Burks, supra, the court held that a confidential informant may provide adequate information to establish probable cause for a warrantless arrest and search of a vehicle if the basis of the informant's credibility and reliability of his information is established. The facts here indicate the confidential informant was credible and reliable, having assisted in convictions in the past. Together with the tip and police observations, we find that probable cause existed to search the vehicle.
Finally, defense argues that the consent to search appellant's boat located at his residence was not the product of free will. He bases this contention on the fact that the report stated that the consent to search the defendant's residence occurred at the same time as the stop of the defendant.
In State v. Burks, supra, the defendant's van was stopped based on a confidential informant's tip and marijuana was found. The defendant then gave the permission for the officers to search his home where more marijuana was found. The court quoted from State v. Bearden, 449 So.2d 1109, 1117 (La.App. 5th Cir.1984), writs denied 452 So.2d 179 (La.1984) that:
"[A] valid consent search is well-recognized exception to the warrant requirement, but the burden is upon the state to prove that the consent was given freely and voluntarily. Voluntariness is a question of fact to be determined by the trial judge upon consideration of the facts and circumstances of each case."
Based on this reasoning, the court held in Burks, supra:
"While the circumstances surrounding the signing of the consent form could indicate subtle coercion by the arresting agents, it is equally likely that the defendant could have concluded that it was in his best interest to cooperate. The record portrays the defendant as intelligent, streetwise, and articulate. After carefully reviewing the record, we find the defendant freely and voluntarily consented to the search of his house in order to secure certain advantages, concluding that it was in his best interest to cooperate with the law enforcement authorities." At 686.
In the present case, the defendant signed a consent form. There is nothing in the record to traverse the officer's assertion within his report that the consent was freely given. As in Burks, supra, the defendant may have cooperated to gain advantages *53 in his best interest. We find therefore that this argument is also without merit.
Because of our findings, therefore, we conclude the motion to suppress was not erroneously denied.
The appellant's second assignment of error alleges that the sentence of six months in the Jefferson Parish Correctional Center in this case was excessive on conviction of misdemeanor possession of marijuana. LSA-C.Cr.P. 894.1; La. Const. Art. 1, Section 20[1].
Originally, the defendant was charged with violating LSA-R.S. 40:966. If found guilty of committing this crime, according to LSA-R.S. 40:966(B)(2), he could have been sentenced to a term of imprisonment at hard labor for not more than ten years and pay a fine of not more than fifteen thousand dollars. The defendant did not go to trial on these charges; on June 10, 1985, he pled guilty to simple possession of marijuana. LSA-R.S. 40:966(C). The maximum sentence for this crime on a first conviction is a fine of not more than five hundred dollars ($500), imprisonment in the parish jail for not more than six months, or both. LSA-R.S. 40:966(D). After the defendant pled guilty, the judge sentenced him to six months in the Jefferson Parish Correctional Center after the following exchange:
Q. And by entering this plea of guilty now, you're waiving and giving up these rights. Do you understand that?
A. Yes, your Honor.
Q. All right. You've been told by your counsel in the event I accept your plea of guilty, you will be sentenced to six months in the Jefferson Parish Correctional Center.
A. Yes, your Honor.
Q. And you agree to that?
A. Yes, your Honor.
A sentence is unconstitutionally excessive in violation of Louisiana Constitution of 1974, Article I, Section 20 if it is grossly out of proportion to the severity of the offense or nothing more than a needless and a purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Winzer, 465 So.2d 817 (La.App. 2d Cir.1985); State v. Williams, 457 So.2d 902 (La.App. 3d Cir.1984).
It is well established that the trial judge is given wide discretion in the imposition of sentences within statutory limits. Absent a manifest abuse of that discretion, the sentence imposed by a trial judge should not be set aside as excessive. State v. Lanclos, 419 So.2d 475, 478 (La.1982). Further, the jurisprudence holds that where a plea bargain results in a significantly reduced potential exposure, the maximum sentence under the crime pled to is not an abuse of the trial court's discretion. State v. Lanclos, supra; State v. McDowell, 457 So.2d 871 (La.App. 3d Cir.1984); State v. Babcock, 461 So.2d 477 (La.App. 3d Cir.1984).
Although the sentence imposed was the maximum allowed for the crime to which the defendant pled guilty, by plea bargaining, the defendant obtained a significant reduction in the sentence he could have received. Consequently, we cannot say under these circumstances that the trial judge abused his discretion or that the sentence is excessive.
Accordingly, after a review of the law and evidence, the conviction and sentence is hereby affirmed.
AFFIRMED.
NOTES
[1] Article 894.1 states in pertinent part:

Art. 894.1. Sentence guidelines; generally A. When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if:
(1) There is undue risk that during the period of a suspended sentence or probation the defendant will commit another crime;
(2) The defendant is in need of correctional treatment of a custodial environment that can be provided most effectively by his commitment to an institution; or
(3) A lesser sentence will deprecate the seriousness of the defendant's crime.