493 So.2d 842 (1986)
STATE of Louisiana
v.
Joseph CATHEY.
No. 86-KA-111.
Court of Appeal of Louisiana, Fifth Circuit.
August 25, 1986.
Rehearing Denied September 17, 1986.
*846 John M. Mamoulides, Dist. Atty., Dorothy A. Pendergast, Asst. Dist. Atty., Gretna, for plaintiff-appellee, State of La.
Jacob J. Amato, Jr., David W. Birdsong, Gretna, for defendant-appellant Joseph Cathey.
Before CHEHARDY, GRISBAUM and DUFRESNE, JJ.
DUFRESNE, Judge.
The defendant was charged with possession of hydromorphone and possession of pethodine in violation of R.S. 40:967. After preliminary motions the defendant proceeded to trial by a six-person jury. He was found guilty as charged and was sentenced to three years at hard labor, a $5,000.00 dollar fine and various court costs on count one and was further sentenced to three years at hard labor on count two to run concurrent with the sentence imposed in count one.
From this conviction and sentence the defendant has appealed on the basis of the following fourteen assignments of error:
(1) Whether a warrant was issued to search the defendant's apartment, absent which the State has the burden of proving an exception to the search warrant requirements.
(2) Whether probable cause existed with or without a warrant to search the defendant's apartment.
(3) Whether the search of the defendant's apartment was conducted as incident to the arrest of Joseph Cathey.
(4) Whether the search of the defendant's apartment was pursuant to the defendant's freely and voluntarily giving consent.
(5) Whether the defendant, Joseph Cathey, requested an attorney so that all interrogation, including a request to search, should have been stopped thereafter.
(6) Whether oral statements made by the defendant, Joseph Cathey during and after his arrest, were free and voluntary so as to allow them to be admissible at his trial.
(7) Whether sufficient notice was given to defendant of the intent to use his inculpatory statements to give him time to prepare an adequate defense thereto.
(8) Whether Judge LeBrun abused his discretion in not allowing a recess in the hearing on the Motion to Suppress to allow another witness to testify.
(9) Whether the prejudicial affect of the evidence of the defendant's prior conviction outweighed its probative value.
(10) Whether a defendant can conduct a full and proper voir dire absent the venire's arrest and conviction records, which are used by the State.
(11) Whether the Judge's actions concerning the defendant Joseph Cathey's opening statement prejudiced the presentation of his case.
(12) Whether Judge LeBrun's comments on the evidence during the trial was sufficient to declare a mistrial.
(13) Whether insufficient evidence was submitted such that defendant's post verdict judgment of acquittal should have been granted.
(14) Whether in light of the evidence presented a verdict of guilty is consistent with the facts or should a new trial be ordered below.

FACTS:
Early in May of 1983, a complaint was lodged with the Jefferson Parish authorities concerning possible narcotic violations and sex crimes involving the defendant. On May 3, 1983, a surveillance of the defendant's mobile home, located at Jefferson Downs, was conducted. At 11:30 a.m. Agent Kratzberg, accompanied by Sergeant DeSalvo, knocked on the door of the defendant's mobile home. The defendant answered, clad only in his underwear and pants, which were unzipped. A juvenile was present and she gave Agent Kratzberg a marijuana cigarette. The defendant was arrested for carnal knowledge of a juvenile, indecent behavior and distribution of marijuana to someone under eighteen. *847 Agent Kratzberg read the defendant his rights twice and then, after obtaining consent from the defendant, searched the trailer. Agent Kratzberg then asked the defendant if he would consent to a search of his apartment, located at 710 Sunset Boulevard in Kenner, and the defendant stated that he would consent.
While Agent Kratzberg was arresting the defendant, Sergeant DeSalvo left the mobile home in an attempt to locate the defendant's girlfriend, Tonia Nolan. He went to Charles "Buddy" Genovese, the track superintendent, who called Ms. Nolan's office. After two or three phone calls, Genovese informed DeSalvo that Ms. Nolan was coming to speak to him. After a period of ten to fifteen minutes, during which Ms. Nolan did not appear, DeSalvo instructed Agents Penaro and LaChute to proceed to and secure the defendant's apartment. DeSalvo then returned to the mobile home where Kratzberg informed him that the defendant had consented to a search of his apartment. Sergeant DeSalvo also called Colonel Miller and informed him that the defendant had been arrested. Miller then went to the mobile home.
DeSalvo and Genovese left Genovese's office and went to the defendant's mobile home. Genovese saw that the defendant was handcuffed and was wearing pants and shoes but no shirt. Genovese testified at the motion to suppress hearing that the defendant asked to use the phone and the officers told him he could use the phone after he was booked. There was no phone in the trailer but one could have been passed through the window. Genovese further testified that he did not hear the defendant request an attorney.
After receiving the call from DeSalvo, Agents LaChute and Penaro went to the defendant's apartment. They knocked on the door but received no reply. Agent LaChute went to the apartment manager's office and obtained a key from the assistant manager. The officer then entered the apartment. Five minutes later, Ms. Nolan arrived. The officers identified themselves and then they and Ms. Nolan waited for the arrival of the defendant and the other police officers.
Agent Kratzberg, Sergeant DeSalvo, and Colonel Miller, along with other officers, transported the defendant to his apartment. The defendant was brought to a back bedroom where he was again advised of his rights. Agent Kratzberg and Colonel Miller asked the defendant for consent to search his apartment and Colonel Miller also advised the defendant that he did not have to consent. The defendant was then brought to the living room and allowed to converse with Tonia Nolan, after which he signed the consent form. Ms. Nolan signed the form as a witness. The defendant then led the officers to a green chest in a closet. He told the officers that if he had anything drug related it would be in that chest because he was a horse trainer and the chest contained veterinarian drugs used to treat horses. The officers searched the chest and found ten Dilaudid tablets and five ampules of Demoral. The defendant told Agent Kratzberg that he knew the drugs were in the chest and that they had been given to him by a friend whose name and address he could not recall.
At trial, Technician Dureau was stipulated an expert in chemical analysis of drugs. He examined the yellow tablets and ampules seized from the defendant's apartment and concluded that the tablets were Hydromorphone (Dilaudid) and that the ampules contained Pethidine (Demoral).

ASSIGNMENTS OF ERROR
The defendant filed fourteen assignments of error in conformity with C.Cr.P. art. 844. In his brief the defendant argues fourteen assignments of error, however, these are not the same fourteen listed in his assignments of error. We will discuss the assignments of error as numbered and discussed in the defendant's brief. A comparison of the assignments of error and the brief show that the substance of all the assignments of error with the exception of listed assignment number ten, are argued in the brief. Assignment number ten is therefore considered abandoned. Uniform *848 Rules of CourtCourts of AppealRule 2-12.4, and State v. Smith, 452 So.2d 251 (La.App. 5th Cir.1984).

ASSIGNMENTS OF ERROR NUMBERS ONE, TWO, THREE, AND FOUR
In assignments of error numbers one through four, the defendant alleges that the search of his apartment was illegal because (1) the officers did not have a warrant, (2) probable cause to search the apartment did not exist, (3) the search was not justified as a search incident to the arrest of the defendant, and (4) the defendant did not give voluntary consent to search his apartment.
The testimony at the motion to suppress hearing and at trial shows that the police officers did not have a warrant to search the defendant's apartment. A search conducted without a warrant is per se unreasonable, Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) unless it is justified by one of the well defined narrow exceptions to the warrant requirement. State v. Hernandez, 410 So.2d 1381 (La.1982). Where a defendant makes an initial showing that a warrantless search occurred, the State bears the burden of proving that the search is justified under an exception to the warrant requirement. Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); State v. Tatum, 466 So.2d 29 (La. 1985).
One exception to the warrant requirement is a search made pursuant to a lawful arrest. United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); State v. Andrishok, 434 So.2d 389 (La.1983). The search shall be limited to the area within the defendant's control, from which he can gain possession of weapons or act to destroy evidence. State v. Krempel, 471 So.2d 841 (La.App. 2nd Cir. 1985); State v. Smith, 477 So.2d 893 (La. App. 4th Cir.1985) citing State v. Andrishok, supra.
In Vale v. Louisiana, supra, the United States Supreme Court stated that:
If a search of a house is to be upheld as incident to an arrest, that arrest must take place inside the house, cf. Agnello v. United States, 269 U.S. 20, 32, 46 S.Ct. 4, 6, 70 L.Ed 145, not somewhere outsidewhether two blocks away, James v. Louisiana, 382 U.S. 36, 86 S.Ct. 151, 15 L.Ed.2d 30, twenty feet away, Shipley v. California, supra, or on the sidewalk near the front steps.
399 U.S. at 33-34, 90 S.Ct. at 1971.
In State v. Perkins, 451 So.2d 1146 (La. App. 4th Cir.1984) evidence of two guns found under a mattress after the police had secured the apartment and arrested both occupants was held inadmissible because "[a]t the time the officers returned to the bedroom, the area was no longer within the immediate control of any of the occupants of the apartment." Id. at 1151. The reviewing court also suggested that if the police officers "thought they had probable cause to search the apartment for additional evidence, they should have maintained their security and applied to a magistrate for a warrant to search." Id. at 1151.
Thus, it would appear that the search of the defendant's apartment cannot be considered a legal search incident to arrest.
One exception to the requirements of both a search warrant and probable cause for the search is a search conducted pursuant to consent. State v. Raheem, 464 So.2d 293 (La.1985); State v. Angel, 356 So.2d 986 (La.1978). In order to rely on this exception, the State must prove that the consent was freely and voluntarily given, as shown by the facts and circumstances of the individual case. State v. Owen, 453 So.2d 1202 (La.1984); State v. Ossey, 446 So.2d 280 (La.1984), Dennis, J. dissent 474 So.2d 440 (La.1985), cert. den. Ossey v. Louisiana, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984); State v. David, 425 So.2d 1241 (La.1983) appeal after remand 468 So.2d 1126 (La.1984). The voluntariness of consent is a question of fact to be determined by the district court judge under a "totality of circumstances" test and his determination is entitled to *849 great weight on appellate review. State v. Wilson, 467 So.2d 503 (La.1985) cert denied, Wilson v. Louisiana, ___ U.S. ___, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985); State v. Ossey, supra; State v. David, supra; State v. Dunbar, 356 So.2d 956 (La.1978). The issue of consent turns on the credibility of the witnesses giving contradictory testimony as well as the circumstances surrounding the consent. State v. Yarbrough, 418 So.2d 503 (La.1982); State v. Cover, 450 So.2d 741 (La.App. 5th Cir.1984) writ denied, 456 So.2d 166 (La.1984).
In the instant case, the consent to search the defendant's apartment first occurred after the defendant's arrest at his trailer. The defendant testified that his consent was obtained because the police officers pulled his shirt over his head and threatened to hit him with a tool resembling a tire iron. However, Agent Kratzberg, Sergeant DeSalvo and defense witness Charles Genovese all testified that the defendant was not wearing a shirt when he was arrested. Agent Kratzberg and Sergeant DeSalvo also testified that none of the officers had a tire iron.
After the police were finished at the defendant's trailer, they drove the defendant to his apartment. There, the State alleges, the defendant again consented to the search of the apartment.
Agent Kratzberg testified that once he and the defendant accompanied by Sergeant DeSalvo and Colonel Miller, arrived at the apartment, he again advised the defendant of his rights and the defendant again stated that he was willing to give his permission to search. The defendant then spoke with Tonia Nolan who also resided at the apartment and she stated she had no objection. The defendant then signed the consent to search form. Ms. Nolan and Colonel Miller signed as witnesses. Colonel Miller testified that while at the apartment, he advised the defendant that he did not have to sign a consent to search. The defendant stated that he wanted to cooperate but that he also wanted to speak with Ms. Nolan. After speaking with Ms. Nolan, the defendant signed the consent search which was witnessed by Ms. Nolan and Colonel Miller.
The defendant alleges that he did not willingly consent to the search and that he was coerced into signing the consent to search form because six or seven police officers were present and because Ms. Nolan was in custody when he arrived at the apartment and he was told she would not be formally arrested if he consented to the search. However, Agent Kratzberg and Colonel Miller both stated that they did not tell the defendant that they would not arrest Ms. Nolan if he consented to the search. In State v. Burks, 466 So.2d 681 (La.App. 5th Cir.1985) writ denied, 468 So.2d 1205 (La.1985) and State v. Vinson, 482 So.2d 48 (La.App. 5th Cir.1986) the Court evaluated the validity of consent search where the defendant was under arrest at the time of the search.
While the circumstances surrounding the signing of the consent form could indicate subtle coercion by the arresting agents, it is equally likely that the defendant could have concluded that it was in his best interest to cooperate. The record portrays the defendant as intelligent, streetwise, and articulate. After carefully reviewing the record, we find the defendant freely and voluntarily consented to the search of his house in order to secure certain advantages, concluding that it was in his best interest to cooperate with the law enforcement authorities.
State v. Burks, 466 So.2d at 686. State v. Vinsen, 482 So.2d at 52. See also State v. Bearden, 449 So.2d 1109 (La.App. 5th Cir. 1984) writ denied, 452 So.2d 179 (La.1984).
In this case, the trial court did not abuse its discretion in finding that the defendant's consent to search was freely and voluntarily given.
The defendant also appears to argue that the entry of Agents LaChute and Penaro into his apartment was illegal and his consent to search was coerced through exploitation of that illegal entry. In support of this contention, the defendant cites State v. Ragsdale, 381 So.2d 492 (La.1980). *850 In that case, police officers entered the home of one Scott Girst to search for the defendant. The Louisiana Supreme Court held the entry illegal because the officers did not have probable cause to believe the defendant was present. After the illegal entry, Girst signed a consent to search form. During the search, methamphetamine was found. The Louisiana Supreme Court suppressed the evidence of the drug finding that the consent to search was coerced through exploitation of the prior illegal entry.
In this case, Agents LaChute and Penaro were dispatched to the defendant's apartment to secure the premises prior to the arrival of the defendant and the police officers. Sergeant DeSalvo testified that he dispatched the agents when Ms. Nolan failed to arrive for questioning, fearing that she was enroute to the apartment to destroy the evidence.
In State v. Bearden, supra this Court approved of a warrantless seizure to protect the evidence.
[the officers] had reasonable grounds to believe that if they had not taken swift action the contraband could have been moved and/or destroyed, and the supplier could have eluded prosecution. See United States v. Thompson, [700 F.2d 944, 950 (5th Cir.1983)]
The officers were prudent and had reasonable cause to act as they did in view of the knowledge they already possessed and the circumstances presented to them. Therefore, we find that the seizure of the Arroyo residence (and even its search, if such had been the case) without a warrant was justified and legally valid. 449 So.2d at 1119.
Here, the record presents only the following testimony to determine whether the agents had probable cause to believe that the defendant's apartment contained illegal drugs: (1) Agent Kratzberg testified that Jefferson officials received a complaint in reference to possible narcotics violations and sex crimes involving the defendant. (2) Colonel Miller testified that an investigation was proceeding with reference to a juvenile individual that was supposedly getting some drugs from an individual out at Jefferson Downs. (3) That the defendant had given a juvenile a marijuana cigarette prior to his arrest and (4) that the defendant's live-in girlfriend did not appear at the track for questioning when informed that the defendant had been arrested.
We agree with the trial judge that the seizure of the defendant's apartment was necessary to prevent the possible destruction of evidence and the consent to search was freely and voluntarily given by the defendant.
Accordingly, Assignments of error one through four lack merit.

ASSIGNMENT OF ERROR NUMBER 5
In his fifth assignment of error, the defendant alleges that his consent to search was obtained after he had requested counsel and therefore, the evidence seized in violation of his Sixth Amendment rights is inadmissible.
In State v. Bourgeois, 388 So.2d 359 (La.1980) on remand 406 So.2d 550 (La. 1981) defendant was arrested and his suitcase was seized at the New Orleans International Airport. While the arresting officer was preparing a warrant application to search the suitcase, the defendant made a request to call an attorney. The defendant was advised that he could make the call after the search. The defendant then agreed to co-operate and asked what he could do. The arresting authorities responded that he could consent to the search. The defendant then signed the consent to search form. The Louisiana Supreme Court found the evidence from the search of the suitcase legal stating that:
A person's sixth and fourteenth amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Clearly, defendant's right to counsel had not attached at the time his request was made. Nor was defendant being interrogated thereby involving his right to counsel *851 upon request. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Hence, Agent Egan's denial of his request was not improper.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER 6
In his sixth assignment of error the defendant alleges that the state did not prove that his remarks made to the police concerning the ownership of the green chest and the drugs found therein were made freely and voluntarily.
The defendant did not object to the testimony regarding these statements during the trial. C.Cr.P. art. 841. In State v. Guiden, 399 So.2d 194 (La.1981) cert. denied 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982) the court held where the defendant had failed to raise the issue of the inadmissibility of his confession based on untimely afforded counsel at trial, he could not raise it for the first time on appeal.
Even had the defendant raised this issue, the defendant's statements are admissible. The defendant's actions in leading the police officers to the chest in the closet and telling them he was the owner of the trunk were done spontaneously, and not in response to any questioning. Thus, the defendant's statements were admissible. Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER 7
In his seventh assignment of error the defendant alleges that the trial court erred in allowing the State to introduce evidence of oral inculpatory statements made by the defendant when the State did not give notice of its intent to use the statements until immediately prior to the trial and thereafter. The defendant alleges prejudice in that he was not given sufficient time to prepare a rebuttal.
C.Cr.P. art. 768 provides:
Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening argument. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
Prior to voir dire, the State informed the defense that the inculpatory statements it intended to use at trial were: (1) that the defendant told the police officer he had to speak to Tonia Nolen prior to consenting to a search of his apartment because she also lived in the apartment and (2) during the search, the defendant told Agent Kratzberg that all the drugs in the apartment were in a large green chest in the closet and that the chest belonged to him and contained drugs and vitamins for horses. At the start of the second day of trial, while voir dire was still being conducted, the State informed the defendant that they also planned to introduce the defendant's statement that the Dilaudid and Demerol found in the trunk belonged to a friend whose name he could not remember and who he didn't know how to contact.
The defendant makes no allegations of bad faith on the part of the State nor does he demonstrate any prejudice absent a general statement that he was not given time to prepare a rebuttal. It appears that the notices given on the first and second days of trial, prior to opening statement, were sufficient.
The purpose of the notice requirement of C.Cr.P. art 768 is to prevent surprise and allow adequate time for the preparation of a defense. Reversal is not mandated when the defendant does not show that he was prejudiced by the State's failure to provide written notice. State v. Parker, 436 So.2d 495 (La.1983). If a defendant merely asserts that he was "surprised", but offers nothing to show how he would have prepared for trial differently, a reversal is not warranted. State v. Knapper, 458 So.2d 1284 (La.1984).
Also, when substantial compliance with the article's purpose has been met through other pretrial pleadings, the *852 failure of the State to present notice will not bar introduction of the statement. State v. Jackson, 450 So.2d 621 (La.1984); State v. Sneed, 316 So.2d 372 (La.1975). A hearing on the free and voluntary nature of the defendant's statement or a hearing on a motion to suppress is sufficient to show that the defendant had actual notice of the inculpatory statements. State v. Williams, 416 So.2d 914 (La.1982).
Here, the defendant was made aware of the existence of the statements at the motion to suppress the evidence hearing. Also, although the defendant alleges that he had insufficient time to prepare a rebuttal, he does not argue that he would have presented his defense differently had he been provided notice of statements.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 8
In this assignment of error the defendant alleges that the trial court erred in denying his motion to hold open the motion to suppress hearing to allow testimony of a police officer who was not present due to his hospitalization following an operation.
After the trial of a hearing begins, the appropriate delay is a recess. C.Cr.P. art. 708. A motion for a recess is to be evaluated by the same standards applicable to a continuance. State v. Bice, 407 So.2d 1234 (La.1981) footnote one; State v. White, 389 So.2d 1300 (La.1980).
In order for the defendant to obtain a recess or continuance to secure the presence of a witness, he must show (1) the actual necessity for the witness and the materiality of his expected testimony, (2) a probability that the witness will be available at the time to which the trial is deferred and (3) due diligence in attempting to procure the witness for trial. C.Cr.P. art 709. These requirements are strictly enforced by the courts. State v. White, 472 So.2d 128 (La.App. 5th Cir.1985). A denial of a motion for continuance is not grounds for reversal absent an abuse of discretion and a showing of specific prejudice. State v. Cochran, 463 So.2d 30 (La. App. 5th Cir.1985) citing State v. Benoit, 440 So.2d 129, 133 (La.1983).
In this case, the defendant argues that he was prejudiced when the trial court refused to hold open the hearing for the testimony of Agent Penaro because the testimony of Penaro's companion, Agent LaChute, and Ms. Bordelon, the assistant manager of the apartment complex where the defendant lived, were in direct conflict. However, the testimony of both LaChute and Ms. Bordelon indicates that Penaro was not present in the office when LaChute and Ms. Bordelon discussed whether the officers had a warrant. Thus, it appears that the agent's testimony would not have been able to explain the conflict in LaChute's and Ms. Bordelon's testimony. The defendant also makes no showing of the materiality of Penaro's expected testimony as per C.Cr.P. Art. 709. Accordingly, we find no abuse of discretion in the trial court's denial of the defendant's motion.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 9
The defendant alleges that the trial court erred in refusing to suppress the evidence of his fifteen year old conviction for smuggling illegal aliens. The defendant alleges that the conviction was stale and irrelevant and the introduction of said conviction was prejudicial.
R.S. 15:495 provides:
Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein.
*853 Pursuant to R.S. 15:462, if the defendant takes the stand thereby becoming a witness "such witness shall be subject to all the rules that apply to other witnesses, and may be cross-examined upon the whole case." A defendant who takes the witness stand is subject to impeachment in the same manner as any other witness. State v. Prather, 290 So.2d 840 (La.1974). "Louisiana jurisprudence has not limited impeachment testimony to recent crimes, nor to crimes indicative of the credibility of the testifying defendant." State v. Hartman, 388 So.2d 688, 693 (La.1980); State v. Prather, supra.
In State v. Hartman, supra, the reviewing court affirmed the trial court's allowance of a twenty-year old conviction into evidence. In State v. Clark, 402 So.2d 684 (La.1981) the reviewing court found no abuse of discretion in the trial court's refusal to exclude the defendant's convictions which occurred in 1951, despite the fact that the defendant was pardoned in 1976. In State v. Ferdinand, 441 So.2d 1272 (La. App. 1st Cir.1983), writ den. 445 So.2d 1233 (La.1984) concurring opinion 465 So.2d 742 (La.App. 1st Cir.1983) the reviewing court stated that it would not be improper for a court to allow the introduction of an eight year old conviction.
In the present case, the trial court did not err in allowing the introduction of the defendant's fifteen-year old conviction.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER 10
In this assignment of error the defendant alleges that the trial court erred in denying his motion for access to the computer records concerning the arrest and conviction records of the jury venire.
A defendant's motion for disclosure of the prior criminal records of a jury venire presents an issue analogous to that raised by a motion for the voting record of each prospective juror. State v. Harvey, 358 So.2d 1224 (La.1978) on remand 369 So.2d 134 (La.1979). State v. Singleton, 352 So.2d 191 (La.1977); State v. Hughes, 436 So.2d 677 (La.App. 4th Cir.1983), writ den. 440 So.2d 732 (La.1983). In order to obtain these records when they are in the possession of the prosecution, the defendant must make a showing that the records are necessary to prevent undue prejudice, hardship or injury to the defendant. State v. Swift, 363 So.2d 499 (La.1978); State v. Wright, 344 So.2d 1014 (La.1977); State v. Blunt, 449 So.2d 128 (La.App. 4th Cir. 1984). To make this showing, the defendant must demonstrate that he cannot practically obtain the information from sources other than the prosecution and that the State intends to use the information in selecting the jury. State v. Swift, supra; State v. Singleton, supra; State v. Blunt, supra; State v. Hughes, supra.
Although the State admitted it was in possession of the arrest records of the prospective jurors, the State did not indicate that it planned to use the information in selecting the jury. Thus it may be argued that the defendant did not show the State's intent to use the information. State v. Blunt, supra. However, the assistant district attorney's assertion that "the State can use whatever tools they want in preparing their case and any type of criminal record" together with the State's questioning of each juror concerning any potential arrests may indicate that the State did use these records in selecting the jury. If such is the case the defendant need only show that he could not practically obtain the records by other means. State v. Swift, supra.
The defendant alleges that the arrest records of the jury venire are confidential and not subject to discovery. The defense may gather such information from the jurors themselves on voir dire examination. See State v. Hughes, supra and State v. Holmes, 347 So.2d 221 (La.1977). The transcript of the voir dire elicited the information of the prospective juror's arrests and in that way made the information available to the defendant. The transcript also shows that the defendant made no attempt to question further the one person who had been arrested. Thus the defendant did not prove that the information he sought from *854 the prosecutor was not available through other means.
The defendant argues that requiring the defense to question the jurors about their possible arrest records is prejudicial to the defendant as it may offend the prospective juror. In State v. Hughes, supra, the court stated that "[u]ntil defense counsel actually attempts to question the jurors and until he actually finds them to be alienated toward his client, his claim is premature." 436 So.2d at 679. The Hughes court then stated that:
Since the voir dire, selection of the jury and the trial have all occurred, the defense counsel cannot exercise his right. He must now show that by not obtaining the information on the jurors he was actually prejudiced. There is no showing that the defense was actually prejudiced by not having the information.
436 So.2d at 679.
In this case, the defendant makes no showing that he was actually prejudiced by not having the information.
The Louisiana Supreme Court's last consideration of this issue occurred in State v. Jackson, 450 So.2d 621 (La.1984) relied on by the State in this case. The court noted that although the State admitted it had the criminal records of 230 prospective jurors and the defendant alleged he could not practically get these records from other sources, the defendant still was not entitled to the records. The Court said at 628-629:
The state conceded it had the information on prospective jurors' criminal records and intended to use it in selecting the jury. Also, defendant asserts he could not practicably obtain the criminal records of the 230 prospective jurors from other sources. Defendant therefore argues that this nonreciprocal advantage of the state offended his due process right to a fair trial. The trial judge denied defendant's motion for disclosure but permitted defendant to question the prospective jurors about their convictions, if any, but not about their arrests.
The criminal records of prospective jurors may be useful to the state in its desire to challenge jurors with inclinations or biases against the state. But they are not pertinent to the purpose of defendant's voir dire: to challenge jurors whom defendant believes will not approach the verdict in a detached and objective manner. Whatever the practical desire of trial counsel, the recognized purpose of full voir dire is not to pack the jury with persons favorable to the defendant or to the state. Under the circumstances of this case, defendant was not entitled to disclosure of the criminal records. Hence, the trial judge did not err in denying defendant's motion for disclosure.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 11
The defendant alleges that the trial court erred by requiring that the defendant make his opening statement after the first state witness had testified rather than at the start of defendant's case.
Immediately after the State's opening statement, the following occurred:
DEFENSE COUNSEL:
Your Honor, at this time, on behalf of my client, Bradley Cathey, I will reserve the right to make my opening statement until the State rests its case.
THE COURT:
You reserve your right to make an opening statement?
MR. AMATO:
Yes, your Honor, after the State's case, which I'm entitled to do.
THE COURT:
Okay.
The State called its first witness who testified and then was excused. The State's second witness was called, and during the testimony an objection was lodged which was discussed outside the presence of the jury. After the discussion, but prior to the continuation of the witness's testimony, the State raised an objection to the defense counsel's reservation of his right to make an opening statement at the close of the *855 State's case. At one point during the discussion the following occurred:
DEFENSE COUNSELMR. AMATO:
... One is that my client has a right for me to make an opening statement; two, it's the Court's discretion if I make it after the State's case. The law doesn't say, you know, that I'll ...
THE COURT:
Do I have a right to stop you from making it now?
MR. AMATO:
I don't think you do, now.
MR. HONIG:
No, your Honor, if he says that he wishes to make an opening statement, he has that right to make an opening statement.
MR. AMATO:
And I ...
MR. HONIG:
But the Court can determine when that opening statement should be made. It can be made right now ...
THE COURT:
I'm going to require that you make it now.
MR. AMATO:
Your Honor ...
MR. HONIG:
Thank you, your Honor.
THE COURT:
Call the jury back in.
MR. AMATO:
How can I make it now in the middle of a witness ...
THE COURT:
Step down, Mr. Witness and we'll put you back ...
MR. AMATO:
Well, I'll waive opening statement, then, your Honor, you know, it's just you knowand note my objection that it's in the Court's discretion. I think you could've said "Make it now or waive it..."
The discussion continued until the trial court changed its ruling:
THE COURT:
Well, what I believeif it's within my discretion, I believe it would only serve to destruct (sic) the jury and I will allow Mr. Amato to make his opening statement at the conclusion of the State's case. But, I will state that I do so only as a means of trying to ameliorate a situation which was brought about by this mis-information that I obtained from Mr. Amato, whether it is correct or not.
However, at the conclusion of the State's case, the defendant called his first witness without making an opening statement. Thus it may be concluded that the defendant waived his opening statement. The defendant has the right to waive an opening statement. C.Cr.P. art. 765; State v. Seiss, 428 So.2d 444 (La. 1983).
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 12
In this assignment of error the defendant alleges that the trial court erred in commenting on the evidence, thereby prejudicing the jury.
At the trial, the following occurred:
BY THE STATE:
Now, let me ask you a question. Did Mr. Cathey or Ms. Nolan provide you with any prescription for thosefor the Demoral or the Dilaudid?
AGENT KRATZBERG:
No. Mr. Cathey stated to me he did not have a prescription for either of those two drugs, and he stated that he had gotten them from a friend.
MR. AMATO:
Your Honor, I have an objection I'd like to tender out of the presence of the jury or at the Bench.
After discussion outside the presence of the jury regarding the admissibility of statements allegedly made by the defendant, the trial court instructed the jury:
Okay, ladies and gentlemen of the jury, I want you to disregard anything that attributed to the defendant as having said he had no prescription, and just disregard that entirely. But you do not necessarily have to disregard the fact *856 that he had no prescription, according to the testimony of theno prescription was given to him or shown to him. Okay.
No further objection was made by the defendant.
Initially, it should be noted that the defense counsel did not object or move for a mistrial when the trial court admonished the jury and seeks to raise this issue for the first time on appeal. If the defendant fails to object to the comments at the time they are made, he waives his right to raise the issue on appeal. C.Cr.P. art. 841; State v. Ellwest Stereo Theatres, Inc., 412 So.2d 594 (La.1982); State v. Gultry, 471 So.2d 804 (La.App. 5th Cir.1985). C.Cr.P. art. 772 provides: "the judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted."
This article does not apply to the trial judge's reasons for rulings on objections relating to the admissibility of evidence, or to explain the purpose for which evidence is offered or admitted, provided the remarks are not unfair or prejudicial to the defendant. State v. Knighton, 436 So.2d 1141 (La.1983) cert. denied Knighton v. Louisiana, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984); State v. Williams, 397 So.2d 1287 (La.1981) remand for resentencing 414 So.2d 371 (La.1982); State v. Gultry, supra. Also, the trial judge's comments on the evidence have been held to be harmless error if those remarks do not imply an opinion as to the defendant's guilt or innocence. State v. Joseph, 437 So.2d 280 (La.1983); State v. Felde, 422 So.2d 370 (La.1982) cert. den. Felde v. Louisiana, 461 U.S. 918, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983); State v. Gultry, supra.
Here the trial court was attempting to explain to the jury that they could not consider as evidence what the defendant said about his failure to provide a prescription but that they could consider the fact that there was no prescription.
The trial court was explaining to the jury what was admissible as evidence and what was not admissible. Also, the trial court did not imply an opinion as to whether he thought the defendant was guilty.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER 13
The defendant alleges that the trial court erred in denying his post judgment verdict of acquittal because the State failed to prove "guilty" knowledge and because the State failed to introduce the actual drugs found during the search.
When reviewing the evidence to support a conviction, the standard to be used by the appellate court is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676 (La.1984). Here the defendant was convicted of two counts of possession of a controlled dangerous substance in violation of R.S. 40:967. To support this conviction the State must prove that the defendant was in possession of the illegal drug and that he knowingly possessed the drug. The State need not prove actual possession. Constructive possession is sufficient to support the conviction. State v. Trahan, 425 So.2d 1222 (La.1983). A person may be considered to be in constructive possession if the illegal substance is subject to his dominion and control. State v. Trahan, supra.
In the present case, the State introduced evidence to show that the drugs were found in a green chest in the defendant's closet and that the defendant told the searching agent that the drugs had been given to him by a friend. The defendant alleged that he did not know that the drugs were in the trunk.
In this case, however, Agent Kratzberg testified that the defendant told him that he knew the drugs were in the chest. The defendant denied telling the *857 officer that he knew about the drugs, instead he testified that he did not know they were there. The reviewing court may not negate or disregard the testimony of a witness merely because it is contradicted by another witness. The trier of fact is the determiner of the credibility of witnesses. State v. Arnaud, 412 So.2d 1013 (La.1982). Here the jury was entitled to believe the testimony of Agent Kratzberg. Given that testimony, a rational trier of fact could have found the defendant guilty of two counts of possession of a controlled dangerous substance.
The defendant also argues that the evidence to convict was insufficient because the State failed to introduce the actual drugs seized in the search of the apartment.
A similar issue was addressed by the Court of Appeal for the Second Circuit in State v. Green, 448 So.2d 782 (La.App. 2nd Cir.1984). In that case a lab report was introduced to identify the drug seized as marijuana. At trial, the defendant objected, alleging that the State failed to establish a chain of custody when it failed to enter the marijuana into evidence. The trial court overruled the objection. On appeal, the defendant again alleged error, arguing that the marijuana itself was the best evidence and should have been produced under R.S. 15:436. The reviewing court found the argument meritless at 448 So.2d 786:
The best evidence objection was not made in the trial court and cannot properly be raised on appeal. In any event, however, absent a showing of some prejudice to the defendant, the best evidence rule will not be applied unreasonably. State v. Moore, 419 So.2d 963 (La.1982). The defendant has failed to show how he was prejudiced by the introduction of only the lab report and not the physical evidence itself. No reversible error is shown. This assignment lacks merit.
Here, at the close of the State's evidence, the defendant moved for a mistrial alleging that insufficient evidence existed to prove that the defendant had drugs and no chain of evidence existed. However, the State introduced the testimony of the officers who found the drugs and also the expert who analyzed the drugs. This is sufficient to prove that illegal drugs were seized from the defendant's apartment. In addition, the defendant makes no showing of prejudice resulting from the admission of the testimony rather than the drugs.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 14
In his last assignment of error the defendant alleges that the trial court erred in denying his motion for new trial urged on the ground that the verdict was contrary to the law and evidence. In support of this claim the defendant reargues his assignments of error. Because these assignments do not warrant reversal, the trial court did not err in denying the defendant's motion for new trial.
This assignment is without merit.
Accordingly, the conviction and sentence are affirmed.
AFFIRMED.