FREDERICKA HOMBERG WICKER, Judge.
 

 11 This is a criminal matter. Defendant Erneal Davis appeals his conviction and sentence on one count of second degree murder. This is the defendant’s third appeal. The defendant has also filed several writ applications in this matter. In a counseled assignment of error, the defendant contends that the trial court erred in refusing to grant him a new trial on the ground that trial counsel was ineffective in that she failed to consult with him prior to the commencement of trial. In a pro se assignment of error, the defendant contends that the trial court erroneously admitted prejudicial autopsy photographs into evidence. For the reasons that follow, we affirm the defendant’s conviction and sentence.
 

 PROCEDURAL HISTORY
 

 On March 30, 2000, defendant Erneal Davis was charged by bill of indictment with second degree murder, a violation of La.R.S. 14:30.1. He pleaded not guilty at arraignment. On October 25, 2000, the case was tried before a twelve-person jury, after which the defendant was found guilty as charged.
 

 | ¡Prior to sentencing, on December 16, 2000, the defendant filed a pro se motion for post-verdict judgment of acquittal with the trial court. In the motion for post-verdict judgment of acquittal, the defendant alleged that he received ineffective assistance of counsel. The defendant further indicated that counsel showed “little, if any, interest in actively pursuing his case for the defendant.” We will construe this motion for post-verdict judgment of acquittal as a motion for new trial.
 
 [1]
 

 On December 18, 2000, the trial court sentenced the defendant to a mandatory term of imprisonment of life at hard labor without benefit of parole, probation or suspension of sentence. On that same day, the defendant filed a motion for appeal, which the trial court granted.
 
 See State v.
 
 
 *206
 

 Davis,
 
 01-1275 (La.App. 5 Cir. 4/10/02), 817 So.2d 171, 172.
 

 On January 31, 2001, the trial court denied the motion for post-verdict judgment of acquittal, stating: “The Court finds the defendant is not entitled to the relief sought because defendant has an appeal pending and this court has lost jurisdiction.” The defendant contended on appeal that the trial court erred in failing to rule on the merits of the motion for post-verdict judgment of acquittal. This Court agreed, vacated the defendant’s sentence, remanded to the trial court for re-sentencing, and instructed the trial court to rule on the motion for post-verdict judgment of acquittal.
 
 Id.
 

 On August 6, 2002, and June 3, |s2003, the trial court heard the motion for post-verdict judgment of acquittal. The trial court denied the motion on June 3, 2003. The trial court immediately thereafter re-sentenced the defendant a term of life imprisonment without benefit of parole, probation or suspension of sentence.
 
 [2]
 

 On February 28, 2005, defendant filed an application for post-conviction relief in the trial court requesting an out-of-time appeal pursuant to
 
 State v. Counterman,
 
 475 So.2d 336, 339 (La.1985). The trial court granted an out-of-time appeal. The defendant’s appellate counsel failed to pursue an appeal.
 

 On April 3, 2007, defendant filed a petition for writ of enforcement with the trial court. In that petition, the defendant asserted that the trial court had never held a hearing to determine if he would be allowed to proceed with an appeal. The trial court thereafter denied the petition. The defendant filed a writ with this Court. We granted the writ and remanded this matter to the trial court with an order to grant the defendant another out-of-time appeal.
 
 State v. Davis,
 
 07-KH-633 (La.App. 5 Cir. 11/2/07) (unpublished writ disposition).
 

 On July 30, 2008, defendant filed a “motion to dismiss appeal without prejudice and remand for a hearing on post trial motion or, in the alternative, to abate post trial motion and reset briefing delays” with this Court. In the motion, the defendant contended that the trial court was unable to produce a transcript of the August 6, 2002 hearing on his motion for post verdict judgment of acquittal because the audiotape of the proceedings held that day had been lost in the aftermath of Hurricane Katrina.
 

 We granted the motion and remanded this matter to the trial court for a new hearing on the defendant’s motion for post-verdict judgment of acquittal on August 12, 2009. We additionally dismissed the appeal that was granted as a result of the defendant’s application for post-conviction relief dated February 28, 2005. The ^hearing was held on August 31, 2009. On September 25, 2009, the trial judge denied the motion with written reasons.
 

 Counsel for the defendant filed a timely motion for appeal from the September 25th judgment. On January 25, 2010, this Court ordered the defendant and the state to show cause why the appeal should not be dismissed. We did so because the appellate record did not then contain “[a] judgment which imposes sentence” as required by La.C.Cr.P. art. 912(A). The defendant and the state subsequently informed this Court that the defendant was resentenced to a term of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on June 3, 2003. Having found that the defendant and the state complied with the show cause order, we ordered that the records of the defendant’s previous ap
 
 *207
 
 peals be supplemented to the appellate record in this appeal.
 

 FACTS
 

 The following testimony was elicited at the defendant’s trial:
 

 Leroy Mitchell testified that he and a group of people frequently played a card game known as “spades” in an empty lot at the intersection of Fourth Street and Ames Boulevard in Marrero every day. Mr. Mitchell described the spades game as a friendly neighborhood game.
 

 On February 3, 2000, Mr. Mitchell went to the lot between 7:00 and 7:30 p.m. While at the lot, a man he later identified in as the defendant passed by him and struck the victim, Wayne Wilson, with a two-by-four piece of wood. Mr. Mitchell testified that he told the defendant “Please stop,” but the defendant continued to hit Mr. Wilson with the two-by-four. Mr. Mitchell testified that Mr. Wilson was either asleep or drunk at the time of the defendant’s attack, and that the man never woke up. Mr. Mitchell further testified that Mr. Wilson did not threaten the defendant prior to the attack, nor did the man have any weapons in his hand.
 

 IsOn cross-examination, Mr. Mitchell admitted that he and three other friends present at the lot had drunk two or three “fifths” of wine between them that day. Mr. Mitchell also testified on cross-examination that he did not know the defendant or Mr. Wilson and that Mr. Wilson had not been playing spades at the time of the defendant’s attack.
 

 John W. Brent testified that on February 3, 2000, he was at the lot on the corner of Ames Boulevard and Fourth Street playing spades. Mr. Brent testified that he observed the defendant beat another man in the head with a two-by-four. Mr. Brent further testified that Mr. Wilson did not threaten, aggravate, or speak to the defendant prior to being subjected to the defendant’s attack, and that Mr. Wilson was sitting down before being hit.
 

 On cross-examination, Mr. Brent testified that Mr. Wilson was awake at the time of the defendant’s attack and that he was drinking beer. He further testified that the defendant’s attack took place at approximately 5:30 p.m.
 

 Lieutenant Don English of the Jefferson Parish Sheriff’s Office was the lead investigator in Mr. Wilson’s homicide. Lieutenant English testified that he and other deputies were able to locate several witnesses to Mr. Wilson’s death. After those witnesses were interviewed, the defendant became the only suspect in Mr. Wilson’s homicide. Lieutenant English testified that he presented a photographic lineup to Kenneth Champagne and John W. Brent. Messrs. Champagne and Brent both positively identified the defendant as the person who killed Mr. Wilson.
 

 Lieutenant English thereafter arrested the defendant and informed him of his
 
 Miranda
 
 rights. The defendant agreed to waive his rights and give a statement to the police. In his statement, which was played for the jury, the defendant admitted striking Mr. Wilson with a two-by-four. The defendant stated that he did so because Mr. Wilson made him angry by talking about another man’s girlfriend.
 

 lfiDr. Susan Garcia was accepted as an expert in the field of medical pathology. She performed an autopsy on Mr. Wilson. Dr. Garcia testified that Mr. Wilson had sustained at least four separate blows to the rear of his skull. Mr. Wilson’s skull had been fractured as a result of one of the blows. According to Dr. Garcia, this blunt-force trauma caused Mr. Wilson’s lethal injury.
 

 Dr. Garcia testified that Mr. Wilson had elevated levels of alcohol at the time of his
 
 *208
 
 death. She did not detect any illicit drugs in Mr. Wilson’s system. Dr. Garcia thereafter testified that autopsy photographs were taken of Mr. Wilson. At that time, defense counsel objected to the introduction of several autopsy photographs depicting Mr. Wilson’s brain after it had been surgically removed by medical technicians. Two photographs (state’s exhibit 6 and state’s exhibit 7) were admitted into evidence over the defense’s objection.
 

 Dr. Garcia thereafter testified that the photograph marked as state’s exhibit 6 was a photograph of the top portion of Mr. Wilson’s brain after it had been removed from the skull. Dr. Garcia noted that the photograph contains dark areas, which were areas of hemorrhage or bleeding into the tissue that covered the surface of the brain. According to Dr. Garcia, the dark areas indicated that the force of the blow was sufficient enough to pass through the skull and cause underlying injury to the cerebral or brain tissue. Dr. Garcia testified that the photograph marked as state’s exhibit 7 was a photograph of the bottom of Mr. Wilson’s brain. Dr. Garcia indicated that state’s exhibit 7 contained the same dark areas as state’s exhibit 6 and that those dark areas are consistent with hemorrhage to the rear of the skull. Dr. Garcia explained that state’s exhibits 6 and 7 also indicated that Mr. Wilson had incurred a “eontrecoup injury,” which occurs when the blow was to the back of the head and the portion of the brain that showed an injury was “away from or eontrecoup to the initial insult.” Put differently, in a eontrecoup injury, the force of |7a blow to the rear of the head causes the brain to impact the anterior (i.e. front) portion of the skull, which in turn causes hemorrhaging to the front of the brain.
 

 The defendant testified that, on February 3, 2000, he woke up at his mother’s house, drank “a couple” of beers and smoked some crack cocaine. He went to the Fourth Street lot to “chill out” and to drink wine with his father. The defendant testified that he brought a bottle of Thunderbird with him, which he and his father drank. Later, the defendant’s father gave the defendant some money, and the defendant bought a “fifth” of Thunderbird. The defendant returned to the Fourth Street lot and drank some more Thunderbird with his father. While the defendant and his father were drinking, Kenneth Champagne, John Brent, and Otis sat down and began to play cards.
 
 [3]
 

 While Kenneth Champagne, John Brent and Otis were playing cards, the defendant and Mr. Wilson began arguing. The defendant testified that he thought Mr. Wilson was insulting another man’s girlfriend, and he told Mr. Wilson to “cool out.” Mr. Wilson told the defendant that he was from New Orleans and that he had “grown up with killers,” which the defendant understood to be a threat. The defendant became angry, threw the cards on the table, and began to walk away from the lot. According to the defendant, Mr. Wilson began taunting him as he began to leave. Mr. Wilson asked him, “What you want to do?,” and started to walk towards the defendant. The defendant testified that he picked up a “stick” and hit Mr. Wilson with it “once or twice.”
 

 On cross-examination, the defendant stated that the Mr. Wilson never lifted his hand to him and “never put his hands” on him. The defendant admitted that he lied when he told an investigating officer that he was sober when he struck Mr. |sWilson with the two-by-four. The defendant also admitted that he lied when he told an investigating officer that Mr. Wilson raised a bottle to strike him.
 

 
 *209
 
 Lionel Davis, the defendant’s uncle, testified that on February 3, 2000, he was in the Fourth Street lot playing cards with approximately eight other men. Mr. Davis indicated that he was not drinking that day. According to Mr. Davis, Mr. Wilson told one of the men at the Fourth Street lot that he had molested the man’s stepdaughter, and the defendant thereafter told Mr. Wilson to “lay low,” and “stay out of this here.” Mr. Davis testified that Mr. Wilson had a bottle of wine in his hand, and that he raised the bottle above his head several times. The defendant told Mr. Wilson to leave him alone several times. Mr. Davis testified that he heard Mr. Wilson tell the defendant that he had killed a person before. Mr. Davis further testified that Mr. Wilson thereafter swung at the defendant with the bottle. The defendant ducked, picked up “something,” and hit Mr. Wilson one time.
 

 COUNSELED ASSIGNMENT OF ERROR-INEFFECTIVE ASSISTANCE OF COUNSEL
 

 In his sole counseled assignment of error, the defendant contends that the trial judge erred by denying his “Motion to Dismiss Appeal Without Prejudice and Remand for a Hearing on Post Trial Motion or, in the alternative, To Abate Post Trial Motion and Reset Briefing Delays.” The defendant contends that the trial court erred in denying the motion because his counsel was ineffective for failing to consult with him prior to the start of trial.
 

 At the August 31, 2009, hearing counsel for the defendant contended that the defendant’s ineffective assistance claims must be analyzed under the two pronged test outlined by the United States Supreme Court in
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).
 

 | ¡Generally, a criminal defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. To prove ineffective assistance of counsel under
 
 Strickland,
 
 a defendant must show both that his attorney’s performance was deficient, and that the deficiency prejudiced him.
 
 Id.
 
 at 687, 104 S.Ct. 2052. An error is considered prejudicial if it was so serious as to deprive the defendant of a fair trial, or “a trial whose result is reliable.”
 
 Id.
 
 To prove prejudice, the defendant must demonstrate that, but for counsel’s unprofessional conduct, the outcome of the trial would have been different.
 
 Id.
 
 at 694, 104 S.Ct. 2052.
 

 For the first time on appeal, the defendant contends that he was denied counsel during a critical stage of the proceedings. The defendant contends that as a result, the second prong of the
 
 Strickland
 
 test, that of prejudice, should have been presumed under
 
 United States v. Cronic,
 
 466 U.S. 648, 659, n. 25, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).
 

 In
 
 Cronic,
 
 the Supreme Court created limited exceptions to the application of
 
 Strickland’s
 
 two-part test in situations that “are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.”
 
 Cronic,
 
 466 U.S. at 658, 104 S.Ct. at 2046. The Supreme Court identified three situations implicating the right to counsel where prejudice must be presumed. First are those situations in which a defendant petitioner is denied counsel at a “critical stage of his trial” or is afforded a “complete denial of counsel.”
 
 Cronic,
 
 466 U.S. at 659, 104 S.Ct. at 2047. Second are those situations in which a defendant’s trial counsel “entirely fails to subject the prosecution’s case to meaningful adversarial testing[.]”
 
 Id.
 
 Finally, prejudice is presumed when “the likelihood that any lawyer, even a fully competent one, could provide effective as
 
 *210
 
 sistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of |]nthe trial.”
 
 Id.
 
 at U.S. at 659-60, 104 S.Ct. at 2047 (citing
 
 Powell v. Alabama,
 
 287 U.S. 45, 57-58, 53 S.Ct. 55, 59-60, 77 L.Ed. 158 (1932)).
 

 The Sixth Amendment does not guarantee a defendant errorless counsel or counsel judged ineffective by hindsight.
 
 State v. Cambre,
 
 05-888 (La.App. 5 Cir. 7/25/06), 939 So.2d 446, 460,
 
 writ denied,
 
 06-2121 (La.4/20/07), 954 So.2d 158, (citing
 
 State v. LaCaze,
 
 99-584 (La.1/25/02), 824 So.2d 1063, 1078,
 
 cert. denied,
 
 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002)). Ineffective assistance claims are assessed on the facts of the particular case as seen from the counsel’s perspective at the time. As such, there is a strong presumption that counsel’s conduct will fall within the wide range of reasonable professional assistance.
 
 Id.
 

 An ineffective assistance of counsel claim is usually most appropriately addressed through an application for post-conviction relief filed in the trial court where a full evidentiary hearing can be conducted.
 
 State v. Taylor,
 
 04-346 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 595. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by an assignment of error on appeal, it may be addressed in the interest of judicial economy.
 
 Id.
 

 In this instance, the record is sufficient to address the defendant’s claim of ineffective assistance of counsel because the trial court was able to question the defendant’s trial counsel at the August 31, 2009 hearing.
 

 The August 31, 2009 Hearing on Defendant’s Ineffective Assistance of Counsel Claim
 

 At the August 31st hearing, Katherine Guste testified that she was the defendant’s trial counsel in this matter. At the time of the hearing, Ms. Guste had been employed with the Jefferson Parish Public Defender’s Office for approximately 14 years. Ms. Guste testified that she recalled the case and its facts |n“like it was yesterday,” however, she had no notes regarding the case. Ms. Guste was certain that she met with the defendant to prepare for the motions prior to the October 10, 2000 pretrial hearing on the defendant’s motion to suppress.
 

 Ms. Guste testified that she and the defendant discussed his case prior to trial, but could not recall where or when they discussed the case. Ms. Guste recognized Defense Exhibit A as a request for funds dated May 3, 2000 to hire Keith Lobrano to interview witnesses in this case. Ms. Guste explained that Mr. Lobrano always reported to her when she hired him, and she was certain they had discussed the facts of this case. Ms. Guste recognized Defense Exhibit B as an additional request for funds dated December 4, 2000. Ms. Guste believed that Exhibit B was a form that Jefferson Parish officials executed to ensure that Mr. Lobrano would be paid for the work he performed on this case. Ms. Guste did not have an independent recollection of any reports that were produced as a result of Mr. Lobrano’s investigation.
 

 Ms. Guste was adamant that she “knew what this case was about,” and that she was aware of the procedural issues of the case. Ms. Guste maintained that, at the time this matter proceeded to trial, she was ready for trial. According to Ms. Guste, she knew that she was ready for trial because she did not ask for a continuance prior to trial.
 

 On cross-examination, Ms. Guste agreed with the prosecution that she cross-examined every witness the state called at trial.
 
 *211
 
 The prosecution noted that Ms. Guste objected to the introduction of photographs of Mr. Wilson’s brain as inflammatory and prejudicial, to which Ms. Guste also agreed. Ms. Guste also testified on cross-examination that she had open file discovery in this matter, meaning that she had access to the entirety of the state’s file.
 

 ligThe defendant testified that he was arrested on February 3, 2000, and that he met Ms. Guste at his arraignment. According to the defendant, Ms. Guste came into the courtroom and asked “who was Erneal Davis.” After the defendant identified himself, Ms. Guste told him that she had been appointed to represent him and that she would visit him in jail. The defendant’s family thereafter retained private counsel, however, private counsel later withdrew from the case prior to trial. Ms. Guste was reappointed as the defendant’s attorney.
 

 This matter was originally scheduled for trial on October 10, 2000. On that date, the defendant testified that he met Ms. Guste for a second time. Ms. Guste told the defendant that she had been appointed to represent him and that she had read the police report. Ms. Guste asked the defendant if he would be willing to plead guilty to manslaughter. The defendant responded that he would be willing to do so. Ms. Guste told the defendant that she would talk to the judge and that she would come to the jail to talk to the defendant at a later date. According to the defendant, Ms. Guste also told him that the bailiffs would bring him back to the court that afternoon for a hearing on his motions to suppress.
 

 That afternoon, the motion to suppress was denied, and the defendant’s trial date was reset to October 25. The defendant testified that Ms. Guste told him that she would come see him in jail, however, the defendant did not see Ms. Guste again until the morning of October 25. Ms. Guste informed the defendant that morning that the court would try the case that day. The defendant testified that he asked Ms. Guste to request a continuance, however, Ms. Guste told him that she could not request a continuance.
 

 According to the defendant, he and Ms. Guste did not discuss his case until after his trial had commenced. The defendant told Ms. Guste that no witnesses were present to testify on his behalf, and the defendant requested that Ms. Guste | iscall his uncle and his father to testify. Ms. Guste told him his father could not be located. The defendant recalled that Ms. Guste called his uncle to testify at trial. However, according to the defendant, Ms. Guste did not interview his uncle before calling his uncle to testify. The defendant further testified that he did not expect to go to trial on October 25 and did not discuss possible defenses with Ms. Guste prior to trial.
 

 At the conclusion of the hearing, the trial judge indicated that she would take the matter under advisement. On September 25, 2009, the trial judge denied the “Motion to Dismiss Appeal Without Prejudice and Remand for a Hearing on Post Trial Motion or, in the alternative, To Abate Post Trial Motion and Reset Briefing Delays.”
 

 Under the circumstances of this case, the defendant cannot meet either prong of the
 
 Strickland
 
 test. We cannot find that the trial court erred in its finding that Ms. Guste’s performance was not deficient. She filed and tried motions in this case, conducted open file discovery, investigated this matter, and attempted to locate defense witnesses (and produced one). She further developed a theory of the case that was consistent with the statements the defendant made to police, made an
 
 *212
 
 opening statement, made timely objections, guided the defendant through his direct examination, called rebuttal witnesses, and made an effective closing argument.
 

 In addition, it does not appear that Ms. Guste’s performance prejudiced the defendant. The evidence against the defendant was overwhelming. Mr. Mitchell testified that the defendant struck Mr. Wilson with a two-by-four several times and that Mr. Wilson did not provoke the defendant. Mr. Brent observed the defendant beat Mr. Wilson with the two-by-four. Mr. Brent further testified that Mr. Wilson did not threaten, aggravate, or speak to the defendant prior to the defendant’s 114attack. The defendant admitted striking Mr. Wilson in the head, but contended that he merely used a “stick.” The defendant also admitted that the defendant “never put his hands” on him and did not “lift his hands to him.” Two individuals positively identified the defendant as the perpetrator of this crime. The defendant cannot show that but for Ms. Guste’s allegedly unprofessional conduct, the outcome of the trial would have been different considering the weight of the evidence against him.
 

 Nor can we say that the defendant is entitled to a presumption of prejudice because he was denied counsel at a critical stage of a criminal proceeding. Ms. Guste testified that she visited the defendant pri- or to trial and that she was prepared to go to trial on October 25, 2000. The defendant contends otherwise. However, the defendant has presented no evidence to validate or corroborate his argument. Ms. Guste additionally testified that she was familiar with the facts of the case, that she was aware of the procedural issues of the case, that she made timely objections at trial, and that she cross-examined each of the state’s witnesses. The defendant did not controvert this testimony.
 

 The defendant has failed to prove that he was denied counsel at a critical stage of the proceedings against him. Accordingly, this assignment of error has no merit.
 

 PRO SE ASSIGNMENT OF ERROR-AUTOPSY PICTURES
 

 In his sole pro se assignment of error, the defendant contends that the trial court erred in allowing two autopsy photographs (State’s Exhibits 6 and 7) into evidence.
 

 At trial, defense counsel argued that the photographs were highly prejudicial against the defendant. The prosecutor responded that the photographs were necessary to corroborate Dr. Garcia’s testimony. The prosecutor also noted that |15one of the photographs showed the contusions in the area of the brain where defendant struck Mr. Wilson, which eventually caused the Mr. Wilson’s death. The trial judge allowed the prosecutor to introduce two photographs depicting Mr. Wilson’s brain into evidence. These photographs were marked as State’s Exhibit 6 and State’s Exhibit 7. Both of the photographs depict Mr. Wilson’s brain after it had been removed from his head during Dr. Garcia’s autopsy.
 

 On appeal, the defendant contends that the prejudicial effect of the photographs greatly outweighs their probative value. The defendant further contends that the photographs should have been excluded from evidence because they “depicted the handiwork of the coroner not the defendant.” The state maintains that the autopsy photographs were necessary to confirm Dr. Garcia’s testimony that the force of the defendant’s blow caused Mr. Wilson’s brain to travel forward in his skull and strike the front portion of his skull, which in turn caused additional injury to his brain.
 

 
 *213
 
 Relevant evidence is any “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” La.C.E. art. 401. All relevant evidence is admissible, except as otherwise provided by law. La.C.E. art. 402. Relevant evidence may be excluded “if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.” La.C.E. art. 403.
 

 Generally, an appellate court places great weight upon a trial court’s ruling on the relevancy of evidence and such a determination will not be reversed absent a clear abuse of discretion.
 
 State v. Durand,
 
 07-4 (La.App. 5 Cir. 6/26/07), 963 So.2d 1028, 1036-37,
 
 writ denied,
 
 07-1545 (La.1/25/08), 973 So.2d 753. | ^Photographs are admissible if they illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place, or thing depicted, subject to the test that them probative value outweighs any prejudicial effect.
 
 Id.
 
 at 1036. The state is entitled to the moral force of its evidence and post mortem photographs of murder victims are admissible to prove
 
 corpus delicti,
 
 to corroborate other evidence establishing cause of death, location, placement, and number of wounds, as well as to provide positive identification of the victim.
 
 State v. Condley,
 
 04-1349 (La.App. 5 Cir. 5/31/05), 904 So.2d 881, 892-893,
 
 writ denied,
 
 05-1760 (La.2/10/06), 924 So.2d 163. The mere fact that a photograph is gruesome does not, in and of itself, render it inadmissible.
 
 State v. Jones,
 
 99-798 (La.App. 5 Cir. 11/10/99), 748 So.2d 1176, 1179,
 
 writ denied,
 
 00-0306 (La.12/8/00), 775 So.2d 1076. Photographic evidence is admissible unless it is “so gruesome as to overwhelm the jurors’ reason and lead them to convict the defendant without sufficient evidence, i.e., when the prejudicial effect of the photographs substantially outweighs their probative value.”
 
 State v. Perry,
 
 502 So.2d 543, 558-559 (La.1986),
 
 cert. denied,
 
 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987).
 

 In
 
 State v. Bridgewater,
 
 00-1529 (La.1/15/02), 823 So.2d 877, 903-904, n. 34,
 
 cert. denied,
 
 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003) the Louisiana Supreme Court found that autopsy photographs introduced during the state’s questioning of the forensic pathologist who performed the autopsy, including several depicting a metal rod inserted into the victims’ bullet wounds, were properly admitted at trial. The Court noted that the photographs corroborated the forensic pathologist’s testimony regarding the trajectory of the bullets that killed the victims and that, contrary to the defendant’s assertion, the probative value of these photographs was not outweighed by their prejudicial effect.
 
 Id.
 

 |17In this case, the autopsy photographs of Mr. Wilson’s brain were relevant to show the manner of death, and the location and number of the lacerations on the rear of Mr. Wilson’s brain. Each of the two photographs shows a different angle of injury to Mr. Wilson’s brain. The photographs were also relevant to confirm Dr. Garcia’s testimony that Mr. Wilson’s brain moved forward and impacted the anterior portion of his skull. These photographs are not so gruesome that they would have overwhelmed the jurors’ reason and led them to convict the defendant based upon the photographs alone without sufficient evidence. We additionally note that this Court has held on several occasions that a trial judge did not abuse his or her discretion by admitting similar photographs into evidence.
 
 See, e.g., State v. Durand,
 
 07-4 (La.App. 5 Cir. 6/26/07), 963 So.2d at 1036
 
 *214
 
 (holding that the trial court did not abuse his discretion in allowing the state to admit autopsy photographs showing injury to victim’s brain, neck, and photographs showing victim’s body after coroner had removed victim’s neck organs).
 

 In light of the foregoing, we find that the trial court did not abuse its discretion in admitting the two autopsy photographs into evidence, even though the photographs were unpleasant. Accordingly, this assignment of error has no merit.
 

 ERRORS PATENT DISCUSSION
 

 In accordance with our usual procedure, we reviewed the record for errors patent. La.C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). We note the following.
 

 Following the second appeal, this Court did not vacate the sentence and remand for resentencing. Rather, we remanded for a hearing on the defendant’s motion since the transcript was lost. Following the hearing, the trial court reaffirmed its prior denial of the motion. Currently, the defendant filed a timely appeal from the reaffirmed denial. This time, however, unlike the second appeal, |1Rthe defendant is afforded his right to a review of the hearing transcript since the hearing has been reconstructed. Any ruling by the trial court on remand would be superfluous since the defendant was sentenced in 2003 and the trial court previously denied the motion. We reiterate that the purpose of the remand in the second appeal was strictly to reconstruct the record in order to afford the defendant his right to a full review of his assigned error.
 

 Recognizing the unique posture of this case in which there was no imposition of sentencing following the latest remand, which issued a show cause order directing the parties to respond as to whether the appeal should be dismissed for the trial court’s failure to impose sentencing on remand. The parties expressed their understanding that the defendant had been previously sentenced in 2003. We agree.
 

 Next, we note that the trial court erred by not observing the statutorily-mandated twenty-four-hour delay between the ruling on the defendant’s motion for post-verdict acquittal and sentencing as required by La.C.Cr.P. art. 873.
 
 [4]
 
 Absent a showing that prejudice resulted from the failure to afford the statutory delay, reversal of a prematurely imposed sentence is not necessary.
 
 State v. Jackson,
 
 99-401 (La.App. 5 Cir. 10/13/99), 746 So.2d 698, 704. In the present case, the defendant was not prejudiced by the failure to observe the delay because the trial judge was required to impose a mandatory sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The failure |19to delay sentencing in this case was harmless.
 
 See also State v. Patterson,
 
 05-560 (La.App. 5 Cir. 1/31/06), 922 So.2d 1195, 1204.
 

 Second, the transcript reflects that the trial judge failed to state that the defendant’s sentence was to be served at
 
 *215
 
 hard labor. However, the commitment/minute entry indicates that the trial judge sentenced the defendant to a term of life imprisonment at hard labor. When there is a discrepancy between the transcript and the minutes, the transcript governs.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983). In this case, since the defendant was sentenced pursuant to La.R.S. 14:30.1, which requires a mandatory sentence of life imprisonment at hard labor, the trial court’s error was harmless.
 
 See State v. Porter,
 
 99-1722 (La.App. 3 Cir. 5/3/00), 761 So.2d 115, 122. Thus, we need not take corrective action on this error patent.
 

 Finally, we note that the trial court incorrectly advised the defendant after re-sentencing him in 2003 that he had “two years from today’s date for any post-judgment verdicts that you want to file ... two years from today’s date after judgment and sentence becomes final to file an Application for Post-Conviction Relief.”
 

 The failure to advise a defendant that “the prescriptive period runs from the time his
 
 conviction and sentence
 
 become final” is an incomplete advisory.
 
 State v. Grant,
 
 04-341, p. 5 (La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598 (emphasis in original). La.C.Cr.P. art. 930.8 provides that no application for post-conviction relief, including an application that seeks an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.
 

 Accordingly, we advise the defendant, by this opinion, that no application for post-conviction relief, including applications that seek an out-of-time appeal, Rpshall be considered if the application is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.C.Cr.P. arts. 914 or 922.
 
 State v. Davenport,
 
 08-463 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 451,
 
 writ denied,
 
 09-0158 (La.10/16/09), 19 So.3d 473.
 

 CONCLUSION AND DECREE
 

 The defendant’s conviction and sentence are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Although styled as a motion for post-verdict judgment of acquittal, the motion is more properly a motion for new trial.
 
 See
 
 La. C.Cr.P. art. 821(B), which states "[a] post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.” In this case, the defendant is not contending that the evidence used to convict him was insufficient. Rather, the defendant contends that his counsel was ineffective and that the trial court wrongfully admitted gruesome autopsy photographs into evidence.
 
 See also
 
 La.C.Cr.P. art. 851, which provides ”[t]he motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.”
 

 [2]
 

 . This sentence will be addressed in our error patent discussion below.
 

 [3]
 

 . Otis's last name is not indicated in the record.
 

 [4]
 

 . La.C.Cr.P. art. 873 provides:
 

 If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
 

 Thus, by its own terms, La.C.Cr.P. art. 873 only applies to a motion for a new trial or a motion in arrest of judgment. However, this Court has previously applied La.C.Cr.P. art. 873 to motions for post verdict judgment of acquittal.
 
 State v. Williams,
 
 97-970 (La.App. 5 Cir. 1/27/98), 708 So.2d 1086, 1089.