GRAVOIS, J.
| í Defendant, Shawn J. Brown, appeals his convictions and sentences for two counts of distribution of cocaine. For the *1034 reasons that follow, we affirm defendant’s convictions and sentences.
PROCEDURAL HISTORY
On September 30, 2014, the Jefferson Parish District Attorney filed a bill of information charging defendant, Shawn J. Brown, with two counts of distribution of cocaine in violation of La. R.S. 40:967(A) (counts one and two). On October 1, 2014, defendant was arraigned and pled not guilty. Numerous pretrial motions were filed, heard, and disposed of.
Defendant waived his right to a trial by jury and proceeded to a judge tidal on February 17, 2016. After the State rested, defendant orally moved for a directed verdict of acquittal, which the trial court denied. After closing arguments, the trial court advised that it wanted to review the evidence and make its ruling on a later date. On February 18, 2016, defendant filed a Motion for Verdict of Acquittal. On February 29, 2016, the trial court found defendant guilty as charged as to both counts and took the Motion for Verdict of Acquittal under advisement. On March 1, 2016, the State filed an opposition to defendant’s Motion for Verdict of Acquittal. On March 3, 2016, defendant filed an Amended Motion for Verdict of Acquittal. At a hearing on March 4, 2016, the trial court denied defendant’s Motion for Verdict of Acquittal.
On March 8, 2016, defendant filed a Motion for Post-verdict Judgment of Acquittal. On March 15, 2016, the trial court questioned whether the parties were ready for sentencing and both sides responded affirmatively. The trial court then sentenced defendant to twenty years imprisonment on each count to be served concurrently with each other. After imposing the sentence, the trial court denied defendant’s Motion for Post-verdict Judgment of Acquittal. Also on March 15, | g2016, defendant filed a Motion for Appeal, which the trial court granted on March 16, 2016. Additionally, on March 15, 2016, the State filed a habitual offender bill of information, alleging that defendant was a third felony offender based on count one.[1] On March 24, 2016, defendant filed a Motion for Discovery, Particulars, and Inspection regarding the habitual offender bill of information and a Motion to Reconsider Sentence arguing that the “sentence imposed upon him on March 15, 2016 is excessive.” On March 30, 2016, the trial court denied defendant’s Motion to Reconsider Sentence.[2]
On April 11, 2016, defendant filed an objection to the habitual offender bill of information, and on April 23, 2016, defendant filed a response to the habitual offender bill. On April 28, 2016, the trial court held the habitual offender bill hearing and found defendant to be a third felony offender. After this finding, the trial court vacated defendant’s original sentence as to count one and resentenced defendant to twenty years without the benefit of probation or suspension of sentence. Defendant’s appeal followed.
FACTS
Deputy Mary Clare Ulasiewicz of the Jefferson Parish Sheriffs Office testified *1035 that in 2014, she was assigned to the narcotics division as an undercover agent. As an undercover agent, she would attempt to buy illegal narcotics, utilizing unmarked police vehicles with audio and video recording devices during the buys. On February 20, 2014, Deputy Ulasiewicz made contact with two individuals she knew to be “Shayp”[3] and “Bennie” at “Mike’s Discount” located at |s“6611 Westbank Expressway.” This was a common place she would go to purchase illegal narcotics.
Deputy Ulasiewicz stated that a man in a blue van approached her at Mike’s Discount, whom she identified as “Bennie,” and she asked him if he “had forty.”[4] He then asked if she wanted “forty” and drove away. He returned after a short time and made contact with a black male in a white t-shirt who was in the parking lot. She identified defendant at trial as the man whom she had seen in the t-shirt in the parking lot. Defendant approached her while the man in the van continued past her. She asked defendant where the man in the van was going. She stated that “he was making motions for me to follow him.”[5] She testified that she said she was not following him and told defendant to go find out what “Bennie” was doing; she also told defendant that she was not waiting.
Deputy Ulasiewicz testified that defendant then walked over to the van and he and “Bennie” spoke briefly. Defendant then walked away, and “Bennie” pulled up next to her. “Bennie” stated that defendant did not trust her because he saw her police radio. He told her to give him the money first, even giving her his keys as collateral, but she refused. Deputy Ula-siewicz stated that “Bennie” approached defendant about ten parking spaces from where she was parked, and she observed the two men have “some kind of hand-to-hand where they switched something.” “Bennie” then walked directly back to her vehicle and handed her two “off-white rock-like objects which [she] later found out to be crack cocaine.” She testified that “Bennie” was not holding anything in his hands until after he interacted with defendant, at which point he walked towards her with a clenched fist and handed her the crack cocaine. She gave “Bennie” the $40.00 and asked him for his number. He stated that he did not have a phone, and she left the location.
|4Peputy Ulasiewicz then returned to the Investigations Bureau and field tested the objects, which tested positive for cocaine. She logged the cocaine into evidence and “burned a C.D.” recording of the transaction.
Deputy Ulasiewicz testified that on February 27, 2014, she returned to “Mike’s Discount” and saw defendant. She asked him for “forty,” and he said he did not have anything. She asked defendant for his phone number, and they exchanged numbers. He called her and told her he did not trust her, but she assured him she was not the police. Deputy Ulasiewicz informed Detective Lisa Calcagno, the case agent, of the phone number and the name “Shayp,” and the next day Detective Calcagno presented her with a photographic lineup. Deputy Ulasiewicz identified defendant as “Shayp” in the lineup.
*1036 Deputy Ulasiewicz testified that she interacted with defendant again on June 9, 2014. She went to “Mike’s Discount” under the same circumstances as before. She and defendant argued a little because he did not remember her. However, defendant also asked her where her Land Rover was because that was the car she was in during the first transaction. Defendant made her get out of the car and lift her shirt to ensure she was not wearing a wire. Deputy Ulasiewicz requested “forty,” defendant gave her the crack cocaine, and she gave him the money. Deputy Ulasiewicz identified defendant as the individual she interacted with on June 9, 2014.
After the buy, Deputy Ulasiewicz returned to the Investigation’s Bureau. She field tested the substance which was positive for cocaine. She also “burned the C.D.” of the transaction.
Detective Calcagno of the Jefferson Parish Sheriff’s Office testified that she was involved in an investigation regarding defendant from February 20, 2014 to June 9, 2014. She stated that on February 20, 2014, an undercover agent went to a location to attempt to buy narcotics. There were two suspects involved in the buy. ^Detective Calcagno indicated that the undercover agent provided her with a recording of the transaction.
Detective Calcagno stated that the next contact came on February 27, 2014. She spoke to the agent who had obtained a phone number. She “ran the phone number through [their] ARMS database”, and the number was related to Sabrina Joseph and Shawn Brown.[6] The female was excluded because no female was involved. Detective Calcagno completed a criminal history search for the male and used his photograph to construct a photographic lineup. Detective Calcagno testified that there were similarities between the picture she obtained and the individual she viewed on the video[7] from the undercover agent. On February 28, 2014, she presented the lineup to the undercover agent for review.
Detective Calcagno testified that defendant was involved in another undercover buy on June 9, 2014.[8] The same undercover agent as had previously identified defendant on February 27, 2014 was involved in the buy. Detective Calcagno again met with the undercover agent and received the downloaded recording of the transaction. Detective Calcagno testified that she obtained an arrest warrant for defendant.
Michael Cole was accepted as an expert in the analysis of controlled dangerous substances. He identified State’s Exhibits 6 and 7 as two reports that he authored. Mr. Cole stated that State’s Exhibit 6 related to the controlled dangerous substance he tested from the February occurrence. He testified that the material was found to contain cocaine. Mr. Cole indicated that State’s Exhibit 7 related to the *1037 June occurrence, and the material was found to contain cocaine.
I rCOUNSELED assignment OF ERROR
In his only counseled assignment of error, defendant alleges that the evidence was insufficient to support his convictions. Specifically, defendant contends that the State did not enter the alleged controlled dangerous substances into evidence or account for their whereabouts, and therefore, the State did not prove the element that the objects involved in the transaction with the undercover agent were cocaine.
In reviewing the sufficiency of the evidence, an appellate- court must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mickel, 09-953 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La. 1/7/11), 52 So.3d 885. According to Jackson, the standard is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. A review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, a reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found the State proved the essential elements of the crime beyond a reasonable doubt. Id.; State v. Price, 00-1883 (La.App. 5 Cir. 7/30/01), 792 So.2d 180, 184. It is not the function of the appellate court to assess credibility or reweigh the evidence. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442, 443. The trier of fact shall evaluate credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Bradley, 03-384 (La.App. 5 Cir. 9/16/03), 858 So.2d 80, 84, writ denied, 03-2745 (La. 2/13/04), 867 So.2d 688.
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience. State v. Williams, 05-59 (La.App. 5 Cir. 5/31/05), 904 So.2d 830, 833. When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 provides that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La. 1/14/00), 753 So.2d 208. This is not a separate test from -the Jackson standard, but rather provides a helpful basis for determining the existence of reasonable doubt. Id.
In the present matter, defendant was convicted of two counts of distribution of cocaine. Distribution of cocaine is defined in La. R.S. 40:967(A)(1), which provides that it is unlawful for any person to knowingly or intentionally distribute a controlled dangerous substance classified in Schedule II. Cocaine is classified in Schedule II as a controlled substance. La. R.S. 40:964(A)(4). The term “distribute” is defined as “to deliver a controlled dangerous substance ... by physical delivery.” La. R.S. 40:961(14). “Delivery” has been juris-prudentially defined as transferring pos *1038 session or control. State v. Brown, 05-102 (La.App. 5 Cir. 5/31/05), 904 So.2d 805, 808, writ denied, 06-1287 (La. 1/26/07), 948 So.2d 159 (citing State v. Staggers, 08-655 (La.App. 5 Cir. 10/28/03), 860 So.2d 174, 177).
In the instant case, defendant argues that the evidence was insufficient to support the conviction because the State did not prove the element regarding the presence of a controlled dangerous substance since the State did not admit the | Rdrugs at trial or prove chain of custody. He does not argue that the evidence was insufficient because the State failed to prove the knowing and intentional act of distribution or his identity. As such, only the issue raised by defendant is addressed herein.
The State, relying on State v. Smith, 12-2358 (La. 12/10/13), 130 So.3d 874, argues that it is not necessary for the State to introduce the substance to prove its identity as a controlled dangerous substance as long as there is sufficient lay testimony or circumstantial evidence from which a jury could find the substance was identified beyond a reasonable doubt. The State contends that based upon the testimony of Deputy Ulasiewicz and Michael Cole, along with the authenticated lab reports, any rational trier of fact could find beyond a reasonable doubt that the off-white rock-like objects were cocaine.
This Court faced similar circumstances in State v. Cathey, 493 So.2d 842, 856-57 (La. App. 5 Cir. 1986), writ denied, 500 So.2d 419 (La. 1987). In Cathey, the State failed to introduce the drugs seized during the search of the defendant’s apartment. The defendant argued that the evidence was insufficient to support his convictions for possession of hydromorphone and possession of pethodine because the State had not introduced the drugs or established a chain of custody. This Court held that the State introduced the testimony of the officers who found the drugs and the analysis of the expert who analyzed the drugs. This Court determined that this was sufficient to prove that illegal drugs were seized from the defendant’s apartment and that the defendant had not shown that he was prejudiced by the admission of the testimony rather than the drugs. Id.
In the case at hand, defendant complains that the evidence is insufficient because the State did not introduce the actual drugs and did not establish a chain of custody, just as argued by the defendant in Cathey. Deputy Ulasiewicz testified at trial that on February 20, 2014, she observed defendant deliver cocaine to [ fl“Bennie,” which he then sold to her. Deputy Ulasiewicz also testified that on June 9, 2014, she bought cocaine directly from defendant. She testified that she field-tested the objects she bought during the undercover buys after both transactions and found that they were positive for cocaine. She also indicated that she logged the cocaine into evidence. Mr. Cole’s expert testimony indicated that his tests on the February and June substances reflected that both samples contained cocaine. Upon review, we find that the testimony of Deputy Ulasiewicz and the analysis provided by Mr. Cole, the expert in the analysis of controlled dangerous substances, were sufficient to support defendant’s convictions for distribution of cocaine. See Cathey, supra. In light of the foregoing, we find that a rational trier of fact could have found that the evidence was sufficient under the Jackson standard to support the convictions. This assignment of error is without merit.
PRO SE ASSIGNMENT OF ERROR
Defendant’s only pro se assignment of error asserts that the evidence was insufficient to support his conviction. In the body of defendant’s brief, he chai- *1039 lenges the admissibility of the lab reports. Specifically, defendant contends that the lab reports introduced at trial were inadmissible because the State did not give him notice of its intent to introduce the reports forty-five days prior to trial in violation of La. R.S. 15:499, La. R.S. 15:500, and La. R.S. 15:501. Alternatively, he asserts that even if the scientific analysis was admissible, it did not establish a chain of custody or authenticate the evidence against him.[9]
To the extent that defendant argues that the evidence was insufficient because the report was inadmissible, this Court has previously held that when addressing sufficiency of the evidence, consideration must be given to the entirety of the evidence, both admissible and inadmissible, to determine whether the evidence is sufficient to support the conviction. State v. Griffin, 14-251 (La.App. 5 Cir. 3/11/15), 169 So.3d 473, 483 (citing State v. Hearold, 603 So.2d 731, 734 (La. 1992)). Therefore, the admissibility of the reports has no bearing on the issue of sufficiency.
To the extent that defendant’s arguments relate to the admissibility of the lab reports independent of an argument regarding sufficiency, we find that when the State sought to admit the reports at trial, defendant’s objection related to inadmissible hearsay, not a lack of notice. Nevertheless, defendant complained of the lack of notice in his March 3, 2016 Amended Motion for Verdict of Acquittal and his March 8, 2016 Motion for Post-verdict Judgment of Acquittal.
Regarding La. R.S. 15:499, La. R.S. 15:500, and La. R.S. 15:501, the Louisiana Supreme Court has held:
In enacting the above statutes [ie., La. R.S. 15:499, La. R.S. 15:500, and La. R.S. 15:501], the legislature sought to establish a procedure to relieve the party desiring to introduce a certificate of the burden of having to produce the person who performed tests on the evidence. State v. Davis, 438 So.2d 1288, 1290 (La. App. 3 Cir. 1983), writ denied, 445 So.2d 455 (1984). This procedure allows a party to submit a document in place of a witness’s direct examination and requires a court to accept such a document as prima facie proof of the facts shown and of proper custody of the physical evidence, provided the certificate is in accordance with [La.] R.S. 15:499 and subject to the conditions contained in [La.] R.S. 15:500-501. See [La.] R.S. 15:500. If, at least five days prior to commencement of the trial, the party against whom such certificate is offered requests a subpoena be issued to the person who performed the examination or the person subpoenaed responds to the subpoena, the certificate shall not be prima facie proof of its contents or of proper custody. [La.] R.S. 15:501(B)(1). Prima facie evidence is defined in BLACK’S LAW DICTIONARY, 579 (7th ed. 1999), as “evidence that will establish a fact or sustain a judgment unless contradictory evidence is produced.” Prima facie evidence is not conclusive proof. Thus, even if admitted, the defendant can attack the certificate of analysis. See [La.] C.E. art. 806.
State v. Cunningham, 04-2200 (La. 6/13/05), 903 So.2d 1110, 1115-16. (Footnote omitted.)
Based on the Supreme Court’s analysis in Cunningham, the notice requirement is only applicable when the State intends to use a scientific report as \upnma facie proof of the facts shown. In the present matter, the State did not admit the report as prima facie evidence. The State called *1040 Michael Cole, who was accepted as an expert in the analysis of controlled dangerous substances, who testified concerning State’s Exhibits 6 and 7 (the scientific reports) and the results of his analysis at trial. Therefore, we find that the State did not violate any notice requirements set out in La. R.S. 15:499, La. R.S. 15:500, or La. R.S. 15:501, since it did not offer the reports as prima facie evidence, and Mr. Cole testified at trial in conjunction with the admission of the reports. Additionally, we find the trial court did not err in admitting State’s Exhibits 6 and 7 at trial, since no violation of La. R.S. 15:499, La. R.S. 15:500, or La. R.S. 15:501 occurred. This assignment of error is without merit.
ERRORS PATENT REVIEW
The record was reviewed for errors patent, according to La. C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La. 1975), and State v. Weiland, 556 So.2d 175 (La. App. 5th Cir. 1990). The following matters merit discussion, although we find that no corrective action is necessary.

Motion for Post-verdict Judgment of Acquittal

First, we find that there was an error regarding defendant’s Motion for Post-verdict Judgment of Acquittal, filed on March 8, 2016. A judgment regarding a motion for post-verdict judgment of acquittal must be disposed of prior to sentencing. See La. C.Cr.P. art. 821. In this matter, the trial court did not expressly deny defendant’s Motion for Post-verdict Judgment of Acquittal until after the sentence was imposed, though the trial court did state that it found defendant guilty on both counts before sentencing. Before imposing the sentence, the trial court inquired as to whether the parties were ready for sentencing, and both defendant and the State indicated that they were.
112Typically, when a trial court fails to dispose of such a motion prior to sentencing, the sentence must be vacated and remanded for resentencing. See State v. Allen, 00-0013 (La.App. 4 Cir. 1/10/01), 777 So.2d 1252, 1256, writ denied, 01-0703 (La. 5/3/02), 815 So.2d 92. However, a motion for post-verdict judgment of acquittal is an improper procedural vehicle following a bench trial. See State v. Williams, 04-1377 (La. App. 5 Cir. 12/1/04), 891 So.2d 26, 30. The proper procedural vehicle for a defendant to argue for acquittal in a bench trial is through a motion for acquittal in accordance with La. C.Cr.P. art. 778.[10] Defendant filed a Motion for Verdict of Acquittal on February 18, 2016, and the trial court denied it on March 4, 2016. Therefore, since the Motion for Post-verdict Judgment of Acquittal was procedurally improper and defendant does not argue that he was prejudiced by the error, we find that this error is harmless and does not require corrective action.

Premature Motion for Appeal

Second, defendant’s Motion for Appeal indicates that it was filed at 3:04 p.m. on March 15, 2016. Neither the minute entry nor the transcript of defendant’s sentencing hearing on March 15, 2016 reflect a specific time when defendant’s sentencing hearing was conducted. The defense attorney does suggest in the transcript, however, that the hearing was *1041 conducted in the morning. In any event, although it is premature to file a motion for appeal prior to sentencing, a premature appeal need not be dismissed when a sentence is imposed after the motion for appeal is filed. See State v. Proctor, 04-1114 (La.App. 5 Cir. 3/29/05), 901 So.2d 477, 484 n.4. In this case, defendant filed his Motion for Appeal on March 15, 2016, ánd was sentenced on that same date. The appeal was then granted on | iaMarch 16, 2016. Therefore, even if defendant filed the Motion for Appeal before the sentencing hearing, no corrective action is required.

Failure to impose imprisonment at hard labor and to restrict benefits

Next, the trial court did not impose the two original and one enhanced sentences in accordance with the relevant statutes. La. R.S. 40:967 provides that the penalty for distribution of cocaine is “a term of imprisonment at hard labor for not less than two years nor more than thirty years, with the first two years of said sentence being without benefit of parole, probation, or suspension of sentence.” Therefore, the trial court did not impose a sentence in accordance with the statute since it did not specify that defendant’s original sentences were to be served at hard labor. However, any defect with regards to the sentencing on count one is moot since that sentence was vacated during the habitual offender bill proceedings.
Further, La. R.S. 15:529.1(G) provides “[a]ny sentence imposed under the provisions of this Section shall be at hard labor without benefit of probation or suspension of sentence.” Therefore, the trial court imposed an illegally lenient sentence when it did not specify that defendant’s enhanced sentence was to be served at hard labor. Further, the trial court erred in not restricting parole on the first two years of defendant’s enhanced sentence because the underlying offense provides that the fjrst two years of the sentence are to be served without the benefit of parole. See State v. Bruins, 407 So.2d 685, 687 (La. 1981).
Additionally, there is an inconsistency between both the original and the habitual offender bill commitments and the transcript regarding the original and the enhanced sentences. While the transcript reflects that the trial court did not specify that defendant’s term of imprisonment, either on the original two counts or on the enhanced sentence, was to be served at hard labor, the commitments indicate that the trial court did impose imprisonment at hard labor as to all three sentences. | uAccording to State v. Lynch, 441 So.2d 732, 734 (La. 1983), if “there is a discrepancy between the minutes and the transcript, the transcript must prevail.”
The requirement that the first two years of defendant’s original sentence should be served without probation, parole, or suspension of sentence, and the first two years of defendant’s enhanced sentence should be served without the benefit of parole, is self-activating pursuant to La. R.S. 15:301.1. Thus, no corrective action is necessary with regards to these errors.
Further, no corrective action is necessary regarding the failure of the trial court to specify that the sentences were" to be served at hard labor since La. R.S. 40:967 and La. R.S. 15:529.1 both mandate imprisonment at hard labor. See State v. Davis, 09-1109 (La.App. 5 Cir. 9/14/10), 45 So.3d 203, 214-15, writ denied, 10-2585 (La. 4/1/11), 60 So.3d 1249. Additionally, this Court has previously held that when the transcript reflects that the trial court did not impose a sentence mandated by the applicable statute and the commitment is accurate, no corrective action is necessary. Id.
*1042 CONCLUSION
For the foregoing reasons, defendant’s convictions and sentences are affirmed.
AFFIRMED

. On May 25, 2016, this Court ordered that the appellate record be supplemented to include the habitual offender bill of information. The habitual offender bill indicated that defendant was found guilty on March 15, 2016; however, the record indicates that the trial court found defendant guilty on February 29, 2016. This Court has previously held that a typographical error in the habitual offender bill of information which does not prejudice the defendant is harmless error. See State v. Varnado, 01-367 (La.App. 5 Cir. 9/13/01), 798 So.2d 191, 194.

. The trial court maintained jurisdiction to rule on the Motion to Reconsider Sentence even though it had granted defendant's Motion for Appeal. See La. C.Cr.P. art. 916.

.Deputy Ulasiewicz later testified that she learned of the name “Shayp” when she acquired defendant’s phone number and that she had him spell it so that she could put the number in her phone.

. Deputy Ulasiewicz indicated that this was "street slang for $40.00 worth of crack cocaine.”

. It is unclear whether Deputy Ulasiewicz is referring to defendant or “Bennie” during this portion of her testimony.

.During trial, defense counsel tried to highlight a discrepancy between defendant’s number and that contained in Detective Calcag-no’s report, which was the basis of the ARMS search that led to defendant's identification. Deputy Ulasiewicz testified that Defense Exhibit 2 (Detective Calcagno’s report) and the number she confirmed with defendant in State’s Exhibit 1 (the June 9, 2014 transaction video) were inconsistent; however, she stated that it appeared to be a typographical error since defendant’s number was 319-1391, and the report memorialized it as 319-13 81.

. Detective Calcagno identified defendant as the individual on the video recording of the undercover buy.

. While Detective Calcagno did not specifically testify that this buy occurred during 2014, from the context of her other testimony, as well as the testimony of Deputy Ulasiewicz, it is clear that this buy occurred on June 9, 2014.

. See counseled assignment of error for an analysis of sufficiency, both in general and more specifically related to chain of custody and authentication of the evidence.

. La. C.Cr.P. art. 778 provides:
In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of defendant, after the close of the state’s evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.
If the court denies a defendant's motion for a judgment of acquittal at the close of the state’s case, the defendant may offer its evidence in defense.